J-S28008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MORLON DWIGHT WINSTON :
:
Appellant : No. 244 MDA 2022

Appeal from the Judgment of Sentence Entered September 3, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005979-2018

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED SEPTEMBER 15, 2022**

Appellant, Morlon Dwight Winston, appeals from the judgment of
sentence entered on September 3, 2021, following his jury trial convictions
for rape by forcible compulsion, sexual assault, and strangulation.[1] We affirm.

We briefly summarize the facts and procedural history of this case as
follows. The victim, M.M.,[2] testified that on October 10, 2018, Appellant, with
whom she had an intimate relationship, strangled her twice rendering her
unconscious both times. When she regained consciousness the second time,
the victim stated that her shorts and underwear had been removed and
Appellant was having sexual intercourse with her. Appellant stopped when
the victim vomited. After the incident, the victim went to Holy Spirit Hospital

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3124.1, and 2718, respectively.

[2] We use the victim's initials throughout this decision to protect her identity.

and reported that she had asthma and was having trouble breathing. At that time, however, she did not implicate Appellant in her attack and she did not assert that she had been sexually assaulted. On October 15, 2018, the victim reported the incident to the police. At that time, the victim accused Appellant of strangling her, but did not report a sexual assault. On October 16, 2018, the victim visited her primary physician and stated that she was sexually assaulted, reported neck pain, and requested tests for sexually transmitted diseases. In follow-up interviews with the police on October 17, 2018 and October 23, 2018, the victim stated that Appellant strangled and sexually assaulted her on October 10, 2018. Thereafter, the victim agreed to allow the police to wiretap communications between her and Appellant. On October 24, 2018, the police recorded three telephone conversations between Appellant and the victim. On October 25, 2018, the police obtained a warrant and arrested Appellant.

A two-day jury trial commenced on March 10, 2021. At the conclusion of trial, the jury found Appellant guilty of the aforementioned charges.[3] On September 3, 2021, the trial court sentenced Appellant to an aggregate term of 12 to 14 years of incarceration, followed by a term of three years of probation. More specifically, the trial court sentenced Appellant to eight to 16 years of imprisonment for rape by forcible compulsion, a consecutive term of four to eight years of incarceration for strangulation, and a consecutive,

---

[3] The jury found Appellant not guilty of rape of an unconscious person pursuant to 18 Pa.C.S.A. § 3121(a)(3).

mandatory term of three years of probation for the rape conviction. Appellant's conviction for sexual assault merged with rape by forcible compulsion for sentencing purposes. On September 13, 2021, Appellant filed a post-sentence motion. On January 11, 2022, the trial court denied relief by order and opinion. This timely appeal resulted.[4]

On appeal, Appellant presents the following issues for our review:

I.   Did the trial court abuse its discretion in denying [Appellant's] motion for arrest of judgment, when [Appellant's] convictions for rape, sexual assault, and strangulation were contrary to the weight of the evidence?

II.  Did the trial court abuse its discretion in sentencing [Appellant] to an aggregate [sentence] of 12-24 years, as well as the individual components of the sentence, when the sentence is so manifestly excessive and inconsistent with the need to protect the public, the gravity of the offenses, and [Appellant's] rehabilitative needs?

Appellant's Brief at 7.

In the first issue presented, Appellant argues that his convictions were against the weight of the evidence presented at trial. Appellant contends that the victim "gave a series of highly inconsistent reports – as many as six different explanations of the assault – to medical professionals, her fiancé, and various law enforcement entities" and "it was not until [13] days after the

_____

[4] Appellant filed a timely notice of appeal on February 8, 2022. On February 10, 2022, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on February 24, 2022. On February 28, 2022, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) that relied entirely upon its earlier decision denying post-sentence relief on January 11, 2022.

alleged assault" that the victim reported the version of events to police that she presented at trial. *Id.* at 27-28. Appellant further asserts that there is no medical evidence to suggest that the victim "received any diagnosis or treatment of traumatic injuries received during a criminal assault." *Id.* at 28. Moreover, Appellant maintains that there are no photographs of the victim's injuries, police did not see visible injuries, and the emergency room physician concluded that redness on the victim's neck was consistent with her rubbing her own neck and her complaints about asthma. *Id.* Appellant also suggests that his "purported admissions in the recorded telephone conversations can be explained instead as a black man's apologizing to a white woman to calm her and lessen the chance of her going to the police." *Id.* at 28-29. Appellant concludes that "[t]he trial court's focus solely on the wiretaps and alleged admissions, did not cure the defects in the [victim's] contradictory actions involving her treatment and reporting" and, therefore, "the guilty verdicts were contrary to the weight of the evidence." *Id.* at 29.

As the Pennsylvania Supreme Court has explained:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

- 4 -

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is [or is not] against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations, quotations, and emphasis omitted).

Here, the trial court determined:

[Appellant's] chief attack upon the convictions [is] that [M.M.] was not a believable witness since the record reflected that she

- 5 -

presented numerous inconsistent and in some cases fabricated versions of her allegations against [Appellant]. These inconsistencies were acknowledged by [the investigating detective who testified at trial].

\*          \*          \*

[I]t is the function of the jury as factfinder to determine the credibility of the witnesses. The wiretap[ped telephone conversations], in particular, were significantly weighty wherein [Appellant's] own words were corroborated by [M.M.'s] trial testimony as to many details of the assault, as she described it. Additionally, in a few places, [Appellant's] statements in the wiretap[ recordings] were in the nature of admissions by [Appellant]. Thus, to the extent there were inconsistencies in the record prior to the wiretaps being conducted, they were largely erased by this evidence.

Specifically, the evidence from those calls proved, in [Appellant's] own words, that on the evening of October 10, 2018, after having dinner together and relaxing on the bed, he "lost control" after [M.M.] took part in a video chat with her male friend[.]

Trial Court Opinion, 1/11/2022, at 14. Additionally, the trial court noted that, over the course of the three wiretapped telephone conversations, Appellant also admitted that he "snapped out," "shouldn't have gotten physical," "hurt [M.M.] beyond measure," and acknowledged that M.M.'s actions were "[not] enough to make [him] put [his] hands on [her]." *Id.* at 15; *see also id.* at 7-11 (detailed analysis of wiretapped recorded conversations with record citations). In those recordings, Appellant also admitted that "he realized that it would mess with [M.M.] to have sex with her after he choked her" and that choking M.M. would not make her want to be with Appellant. *Id.* at 15. Ultimately, the trial court opined that Appellant "repeatedly reflected a guilty conscious throughout all three calls, telling [M.M.] on multiple occasions to

- 6 -

being sorry, begging her forgiveness, and promising not to lose control again or letting the same thing happen again." *Id.* Accordingly, the trial court concluded that "[t]he jury's verdict convicting [Appellant] o[f] these three crimes was not so contrary to the evidence as to shock one's sense of justice and thus an award of a new trial [was] not warranted in this case." *Id.* at 13.

Based upon our appellate standard of review, we discern no abuse of discretion in ruling upon Appellant's weight of the evidence claim. In this case, the trial court determined that any inconsistencies in the victim's prior descriptions of events to hospital personnel and the police were negated by Appellant's own recorded statements and admissions. As such, the trial court determined that the jury's verdicts were not so contrary to the evidence as to shock one's sense of justice and that Appellant was not entitled to a new trial. We give the gravest consideration to the findings and reasons advanced by the trial court upon our review. Here, the judgment is manifestly reasonable, the law was properly applied and the record shows the trial court's denial of relief on Appellant's weight of the evidence claim was not the result of partiality, prejudice, bias or ill-will. Accordingly, Appellant is not entitled to relief on his first appellate claim.

In his second issue presented, Appellant contends that the trial court abused its discretion by imposing a "clearly unreasonable" aggregate sentence of 12 to 24 years of imprisonment. Appellant's Brief at 30. Appellant argues that the trial court "concentrated solely on the nature of the offenses and

ignored substantial mitigation that should have engendered a lesser sentence" including the following:

> [Appellant] was 54 years of age at the time of sentencing. He is disabled and a recipient of social security benefits. He has a physical disability stemming from being attacked with a machete as a teenager.
>
> Although [Appellant] has an extensive criminal history, most of it is related to drug use. There is no history of committing sexual assaults. [Appellant] had a traumatic childhood. He was physically and sexually abused by his stepfather.

*Id.* at 31.

Furthermore, Appellant maintains that the trial court should have imposed concurrent sentences because the rape by forcible compulsion conviction and the strangulation conviction were "linked." *Id.* at 33. Appellant avers that "[t]he [trial] court's characterization of the rape as distinct from the strangulation ignores that while the strangulation occurred prior to the rape, it was the fear of the strangulation that provide[d] the basis of the 'forcible compulsion'" element of the rape. *Id.* Appellant asserts that "[w]hile not the perfect merger, the trial court's consideration of [the offenses] as separate ignores that but for the prior strangulation, there would only be a sexual assault." *Id.* at 34.

As this Court has explained, in order to reach the merits of a discretionary aspects of sentencing claim,

> we must engage in a four-part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his or her issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to

the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code.

***Commonwealth v. Williams***, 198 A.3d 1181, 1186 (Pa. Super. 2018) (internal citation and original brackets omitted).

Here, Appellant has complied with the first three requirements set forth above. Moreover, we discern that Appellant presents a substantial question. ***See Commonwealth v. Derry***, 150 A.3d 987, 992 (Pa. Super. 2016) (substantial question raised where appellant claimed the court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of [a]ppellant, as 42 Pa.C.S.[A.] § 9721(b) requires")(citation omitted); ***see also Commonwealth v. Knox***, 165 A.3d 925, 929-930 (Pa. Super. 2017) ("A claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances ... raises a substantial question.").

We employ the following standard of review:

If this Court grants appeal and reviews the sentence, the standard of review is well-settled:

> sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

***Commonwealth v. Malovich***, 903 A.2d 1247, 1252–1253 (Pa. Super. 2006) (citations omitted).

The Pennsylvania Supreme Court in **Commonwealth v. Walls**, 926 A.2d 957, 964 (Pa. 2007) determined that a sentence can be deemed unreasonable after a review of the trial court's application of the factors contained in 42 Pa.C.S.A. §§ 9721(b) and 9781(d). Section 9721(b) states:

> [T]he court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation).

> 42 Pa.C.S.A. § 9721(b).

Section 9781(d) provides that upon appellate review of sentence, this Court must have regard for:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; [and] (4) the guidelines promulgated by the sentencing commission.

> 42 Pa.C.S.A. § 9781(d).

**Commonwealth v. Ventura**, 975 A.2d 1128, 1134-35 (Pa. Super. 2009).

"[L]ong standing precedent ... recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." **Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa. Super. 2005); **see also** 42 Pa.C.S.A. § 9721. We will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently unreasonable." **Commonwealth v. Gonzalez–Dejusus**, 994 A.2d 595, 599 (Pa. Super. 2010). Moreover, it is well-settled that

- 10 -

when the trial court has the benefit of a presentence investigation ("PSI") report, it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein. *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa. Super. 2002).

*Commonwealth v. Brown*, 249 A.3d 1206, 1211–1212 (Pa. Super. 2021).

Moreover, the *Brown* Court noted:

Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.  [An a]ppellant is not entitled to a "volume discount" on his multiple convictions by the imposition of concurrent sentences.

*Brown*, 249 A.3d at 1216 (internal citations omitted).

Finally,

our Supreme Court emphasized that the appellate court's role in reviewing the discretionary aspects of a sentence is to discern whether the sentencing court abused its discretion. Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. § 9781(c). Under 42 Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines.  [Our Supreme] Court specifically admonished that the weighing of factors under 42 Pa.C.S.A. § 9721(b) was exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors.  The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the

guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

***Commonwealth v. Bowen***, 975 A.2d 1120, 1123–1124 (Pa. Super. 2009) (internal case citations omitted).

Initially, we note that there is no dispute that the trial court sentenced Appellant within the applicable sentencing guidelines. Moreover, upon sentencing, the trial court relied upon a presentence investigation report. ***See*** N.T., 10/3/2021, at 22. As such, we presume that the trial court was aware of the mitigating factors Appellant currently points to on appeal. ***See also*** Trial Court Opinion, 1/11/2022, at 18, *citing* N.T., 10/3/2021, at 22 (Appellant "had a recognizable and understandable history of trauma throughout his life; however, based on years and the report provided to the court about his history, it appears that [Appellant] paid that trauma forward instead of taking other opportunities to stop the cycle of trauma in our society."). Furthermore, the trial court "imposed consecutive sentences for rape and strangulation, as perpetrated by [Appellant], because they were separate violent crimes that could have been completed without the other." Trial Court Opinion, 1/11/2022, at 17. The record reflects that the Appellant choked the victim to the point of unconsciousness at least twice before raping her. As the trial court recognized at sentencing, "[t]here were many opportunities for [Appellant] to stop" the "chain of events that happened that evening" and, therefore, the acts of strangulation were "distinct from the act of forcible rape." N.T., 10/3/2021, at 23. We discern no abuse of discretion. It was

reasonable for the trial court to impose two consecutive sentences (each within the sentencing guidelines) to the separate convictions and Appellant was not entitled to a volume discount. For all of the foregoing reasons, Appellant's challenge to the trial court's sentencing discretion lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/15/2022