J-S34045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERICA MARKUS | : | |
| | : | |
| Appellant | : | No. 1448 WDA 2021 |

Appeal from the Judgment of Sentence Entered October 18, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000317-2021

BEFORE:  DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED:  September 30, 2022**

Erica Markus (Markus) appeals from the October 18, 2021[1] judgment of

sentence imposed by the Court of Common Pleas of Allegheny County (trial

court) following her guilty pleas to three counts each of aggravated assault by

vehicle while DUI, aggravated assault by vehicle and recklessly endangering

another person and one count each of DUI:  controlled substance, DUI:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Markus was initially sentenced on October 14, 2021.  Thereafter, the trial court held a resentencing proceeding *sua sponte* to clarify its intention to impose the sentences for each count of aggravated assault by vehicle while DUI consecutively rather than concurrently.  For reasons unclear from the record, the corrected sentencing order was not docketed until November 30, 2021.  Markus's post-sentence motion was timely filed from the October 18, 2021 resentencing date and her notice of appeal was timely filed after the denial of that motion.  **See** Pa.R.Crim.P. 720(A).

controlled substance—impaired ability, possession of a controlled substance, possession of drug paraphernalia and related vehicle violations.[2]  Markus challenges the discretionary aspects of her sentence.  We affirm.

We glean the following facts from the certified record.  On June 20, 2020, Markus drove her vehicle at a high speed into Kelly Bundridge (Bundridge), William Bernard (Bernard) and Adam Flam (Flam), who were standing by their vehicles on the side of the road.  Stamp bags were recovered from Markus's vehicle and she tested positive for fentanyl on a blood test.  Markus entered an open guilty plea to the above-mentioned offenses.

Following her plea, the Commonwealth presented several victim impact statements.  A friend of Bundridge, Kweinlin Mercurio (Mercurio), testified that Bundridge was a business owner with extensive support from family and friends in the neighborhood.  Following the accident, she was hospitalized for an extended period and underwent numerous surgeries and procedures to treat her injuries.  Mercurio expressed her dismay that Markus had been living in a rehabilitation center following the accident and was not incarcerated.  She requested the maximum prison sentence.

Kelvyonna Bundridge (Kelvyonna), Bundridge's daughter, testified that her mother had always been a hard worker and had provided for her family

---

[2] 75 Pa.C.S. §§ 3735.1(A) & 3732.1(A); 18 Pa.C.S. § 2705; 75 Pa.C.S. §§ 3802(D)(1) & (2); 35 P.S. §§ 780-113(a)(16) & (32); 75 Pa.C.S. §§ 3736(A), 3714(A) & 3362(A)(3).

before the accident. They had been preparing for a Father's Day cookout with the family when the accident occurred and Kelvyonna waited with her mother for the ambulance. She explained the trauma of witnessing her mother's injuries and the toll on her family as they struggled to adjust to running the household and caring for Bundridge through multiple surgeries.

Tanya Anthony (Anthony), Bundridge's older sister, testified that Bundridge had lost her legs in the accident and needed to relearn how to complete basic daily tasks. She was unable to attend her son's high school graduation and he had to postpone entering college to help care for her. Her father[3] was in a coma for several months after the accident and needed to relearn how to walk and complete other tasks. He suffered from a broken tailbone and shoulder blade. Anthony testified that the entire family had suffered because of the accident and struggled seeing Markus in the community afterwards. She requested a lengthy prison sentence.

Finally, the Commonwealth read a letter authored by Bundridge into the record. She stated that she continued to experience chronic and severe pain and had to put her businesses on hold as she focused on relearning to walk. She expressed anger at losing her independence and that her children and family members had to witness the accident and see her and her father suffer.

---

[3] Anthony did not identify her father by name but she and Bundridge both referenced their father as one of the other victims in the accident.

They continued to experience stress and anxiety. She also requested a lengthy prison sentence.

The trial court accepted Markus's guilty plea and deferred sentencing for the preparation of a presentence investigation report (PSI). At sentencing, Markus presented the testimony of Mattie Tunney (Tunney), an assistant house manager at a three-quarter house. Tunney met Markus at Power Halfway House (Power) in October 2020 after the accident. Tunney had suffered strokes and at that time was struggling to walk. She testified that Markus patiently worked with her on building strength and practicing walking until she was able to walk up hills on her own. She said that Markus had always cared about others and was dedicated to self-growth. Markus had been voted by 25 women at Power as a facilitator in the house, which was a leadership position. Tunney testified that Markus continued to serve as a good example to other residents at the three-quarter house and helped other residents who were struggling.

Markus also presented a letter from Danielle Livingston, the owner of the three-quarter house. She stated that Markus had lived there since April 2021 and had followed all the rules of the house, passed all drug testing and become a role model for other residents. She said that she was impressed with Markus's progress and dedication to recovery.

Mercurio testified again at sentencing and read substantially the same impact statement as she gave at the guilty plea hearing. Sheena Lamb

(Lamb), Bundridge's sister, also testified that Bundridge had always been a strong person and helped her family when they were struggling. She testified that it was traumatizing to see her father and Bundridge in the hospital after the accident. She expressed anger at Markus and said that she had ruined her family's life.

Markus read her own statement into the record and expressed remorse for how she had impacted the victims and their families. She said the accident had changed her mindset because she had previously believed that her drug and alcohol use only affected her. She said she considered suicide knowing the effect she had had on the victims and she voluntarily entered treatment to address her addiction. Treatment allowed her to see how her addictions hurt the people around her and she had committed to changing her life. She apologized to the victims and reiterated her commitment to sobriety.

Before imposing the sentence, the trial court noted that while Markus did not intentionally hit the victims with her vehicle, she did choose to use heroin before driving without considering the consequences to the people around her. It explained that her actions impacted not only the victims, but their friends, family and larger community. It then sentenced Markus to 18 to 36 months' incarceration followed by five years of probation for each count of aggravated assault by vehicle while DUI. For the count of DUI: controlled substance, it sentenced her to 72 hours' incarceration and five months of probation. The trial court stated at the sentencing hearing that the sentences

of incarceration for the counts of aggravated assault by vehicle while DUI were imposed concurrently. However, the written sentencing order docketed after the hearing indicated that these periods of incarceration were to be served consecutively, for an aggregate sentence of 4.5 to 9 years of incarceration followed by 5 years of probation. *See* Sentencing Order, 10/14/21, at 3.

On October 18, 2021, the trial court reconvened the case *sua sponte* and said "it was brought to my attention that some people had some confusion as to what the sentence was that I imposed on October 14. I have no such confusion, and I will repeat it again." N.T., 10/18/21, at 2. It explained that the sentences of incarceration for aggravated assault by vehicle while DUI were consecutive rather than concurrent, which was its original intention in imposing the sentence.

The trial court then allowed Markus to read additional sentencing statements by her mother, brother and son into the record. The three statements opined that Markus was sincerely remorseful for her actions and dedicated to her sobriety, having attended several rehabilitation programs after the accident. They requested the trial court take Markus's progress into account when crafting her sentence. Markus placed these statements on the record but did not request the trial court to reconsider its sentence at that time.

She then filed a timely post-sentence motion seeking reconsideration of her sentence. She argued that at 49 years of age, she had no prior criminal

history and had been law-abiding until she started using drugs approximately one year before the accident. She had attended inpatient treatment for her addiction followed by two stints in sober-living facilities, totaling 16 months of treatment, and had remained sober since the accident. She argued that she had taken responsibility for her actions by entering the open guilty plea and requested that the trial court amend the sentence to impose the periods of incarceration concurrently.

The trial court denied the motion and Markus timely appealed. She and the trial court have complied with Pa. R.A.P. 1925.[4] On appeal, Markus challenges the discretionary aspects of her sentence. She argues that the trial court abused its discretion by resentencing her to serve the periods of incarceration consecutively without consideration of her character and rehabilitative needs, resulting in a manifestly excessive and unreasonable sentence.[5]

_____

[4] Markus was sentenced by the Honorable David Cashman. Following his retirement, the case was reassigned to the Honorable Elliot C. Howsie, Jr., who authored the Pa. R.A.P. 1925(a) opinion.

[5] Our standard of review is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

*(Footnote Continued Next Page)*

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve her claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement of reasons for allowance of appeal pursuant to Pa. R.A.P. 2119(f) in her brief, and raise a substantial question for review. ***Id.*** Here, Markus filed a timely post-sentence motion and notice of appeal and has included a statement pursuant to Pa. R.A.P. 2119(f) in her brief. Thus, we consider whether she has raised a substantial question.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Clarke***, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). Markus contends that the trial court imposed a manifestly excessive and disproportionate sentence without considering mitigating factors, such as her lack of criminal history, progress in various treatment

---

judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Wallace***, 244 A.3d 1261, 1278–79 (Pa. Super. 2021) (citation omitted).

programs and commitment to sobriety. This claim presents a substantial question for our review. *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075-76 (Pa. Super. 2019) (citations omitted); *see also* 42 Pa.C.S. § 9721(b). Accordingly, we proceed to the merits.[6]

Here, the sentencing guidelines recommended a minimum sentence of 12 to 24 months' incarceration for the counts of aggravated assault by vehicle while DUI. Markus's sentences of 18 to 36 months' incarceration then fell in the middle of the standard range of the guidelines for each count. When reviewing the discretionary aspects of a sentence that falls within the sentencing guidelines, we must affirm unless the "application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). In assessing the reasonableness of a sentence, we consider

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

---

[6] Markus also argues that the trial court improperly relied on a factor already accounted for in the sentencing guidelines, the seriousness of the offense, when imposing the sentence. This claim was not included in her post-sentence motion and is waived. *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa. Super. 2018); Pa. R.A.P. 302(a).

When imposing a sentence, a trial court must ensure that the sentence is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations [enunciated in that section]." *Commonwealth v. Coulverson*, 34 A.3d 135, 145 (Pa. Super. 2011) (citations omitted). A sentencing court is not required to impose the "minimum possible confinement," but rather must craft an individualized sentence after considering "the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citations omitted). Finally, it is well-established that a defendant is not entitled to a "volume discount" in the form of concurrent sentences for multiple crimes. *See Commonwealth v. Brown*, 249 A.3d 1206, 1217 (Pa. Super. 2021) (citation omitted).

Here, the trial court heard victim impact statements detailing the profound impact of Markus's actions on the lives of Bundridge and her family and friends. Bundridge lost both of her legs, underwent numerous surgeries and procedures over the course of the following year, and still required extensive support from her family and friends in her day-to-day life. In her

statement, Bundridge explained that she had missed her son's graduation due to her injuries and that her children were continuing to experience stress and anxiety as a result of the accident. Her daughter, sisters and friend testified that Bundridge had always been an active and loving member of the family and a successful business owner, but her injuries had rendered her unable to participate in her family and work life as she had previously. Bundridge's father, another victim of the accident, was hospitalized for several months in a coma and had to relearn how to walk and perform daily tasks.

The trial court also heard from Markus's witnesses and Markus herself before imposing her sentence. Markus apologized for her actions and expressed remorse for the impact she had on the victims and their families. She voluntarily admitted herself into an inpatient treatment facility and entered progressive sober living facilities in the 16 months following the accident. Two individuals from Markus's treatment programs offered statements to the trial court detailing her success in the programs and positive influence on other residents struggling with sobriety. She had remained sober since the accident and was dedicated to maintaining her sobriety in the future.

Our review of the record reveals that the trial court did not abuse its discretion in crafting Markus's sentence. It heard and considered statements from witnesses on both sides of the case and was entitled to weigh all evidence and the circumstances of the offenses before imposing its sentence. We may not disturb the trial court's weighing of that evidence without a clear abuse of

discretion. ***Wallace***, ***supra***. The trial court stated that it found Markus's case to be disturbing but acknowledged that, unlike many criminal cases, she had not intentionally harmed the victims. It recognized that her crimes were precipitated by her drug use but emphasized that she had intentionally used narcotics before driving and did not consider the safety of those around her when doing so. It commented that her actions had harmed and not only altered the lives of the victims, but impacted their families, friends and larger community. Under these circumstances, a sentence within the standard range of the sentencing guidelines was not "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022