J-A05032-21

2021 PA Super 71

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CISTON BROWN | : | |
| | : | |
| Appellant | : | No. 165 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 21, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003568-2018

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                                    **FILED APRIL 15, 2021**

Appellant Ciston Brown appeals from the Judgment of Sentence of

sixteen (16) years to thirty-two (32) years in prison entered in the Court of

Common Pleas of Philadelphia County on October 21, 2019,[1] after a jury

_____

* Former Justice specially assigned to the Superior Court.

[1] A review of the trial court docket reveals that judgment of sentence was imposed on October 21, 2019.  On October 30, 2019, Appellant filed a post-sentence motion, and the trial court denied the same on December 5, 2019. On January 2, 2020, counsel for Appellant filed a notice of appeal stating the appeal was "from denial of the Post-Sentence Motions/Motion to Reconsider Combined, entered in this matter of the 5th day of December 2019. However, counsel for Appellant erroneously stated the appeal was from the order denying the post-sentence motion, for "[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n. 2 (Pa.Super. 2001) (*en banc*) (citation omitted), *appeal denied*, 800 A.2d 932 (Pa. 2002).  We have amended the caption accordingly.

convicted him of three violations of the Uniform Firearms Act and acquitted him of murder and aggravated assault charges. Following our review, we affirm.

On May 22, 2018, Appellant was charged in a Criminal Information with Criminal Homicide, Aggravated Assault, Possession of a firearm by prohibited person, Firearm not to be carried without a license, Carrying a firearm on public streets or public property in Philadelphia, Possession of an Instrument of Crime (PIC), and Recklessly Endangering Another Person.[2] A jury trial commenced on July 25, 2019, pertaining to all counts except Possession of a Firearm Prohibited, 18 Pa.C.S.A. § 6105, which was bifurcated to avoid prejudice to Appellant by alerting the jury to his prior criminal record; Appellant ultimately entered an open guilty plea to that charge.

The testimony revealed that on March 5, 2017, at approximately 2:20 p.m., nineteen-year-old S'brii Davis was driving with his fifteen-year-old brother Zybrii Davis, his friend Trevanne Kee and his uncle Trammel Guyton in Philadelphia. As the four sat at the corner of 81st Street and Lyons Avenue, Appellant pulled up alongside the car.

Appellant testified in his own defense at trial. Appellant explained that when he saw S'brii, he asked S'brii if he had any marijuana, as Appellant wanted to purchase some to bring back to a girlfriend's home. S'brill said he

---

[2] 18 Pa.C.S.A. §§ 2501(a); 2702(a); 6105(a)(1); 6106(a)(1); 6108; 907(a); and 2705, respectively.

did not have marijuana but enumerated other substances he did have. Appellant was not interested, and he noticed others in the car "fidgeting."

The two cars proceeded on 81st Street, and both eventually came to a stop next to each other. An argument between S'brii and Appellant ensued. N.T., 6/29/19, at 66-73. Appellant explained that when S'brii pulled out a black firearm, fearing for his life, he took out his own, loaded gun which was located between his driver's seat and center console and shot at the brothers multiple times. Appellant sped away, and S'brii's vehicle crashed into a pole. 6/29/19, at 75-76, 89. **See also** N.T., 6/26/19, at 84-87, 91-92, 195-208.

Appellant explained that after he drove away, he used a vacuum to remove the shell casings from the bullets from his vehicle. He admitted to illegally carrying the firearm used in the shooting and that he knew there was a warrant out for his arrest. N.T., 7/29/19, at 64-80, 112-13, 121.

Police could not locate Appellant until nearly a year had passed, although they made numerous efforts to find him at his mother's and grandmother's homes as well as at the residences of multiple girlfriends. N.T., 7/26/19, at 175-87.

S'brii was shot twice in his torso. He sustained serious internal injuries and died within a few minutes at the scene. N.T., 7/26/19, at 134-43. His brother was shot in the head, and a bone in his leg was shattered as a result of the crash. Zybrii was transported to Children's Hospital of Philadelphia where was placed in a medically induced coma and underwent multiple

surgeries. While he survived his injuries, at the time of trial, Zybrii could walk but was unable to run, and he had lost the mobility of his right hand. N.T., 7/25/19, at 198-99; 7/26/19, at 218-20.

On July 31, 2019, the jury returned a verdict of not guilty on the Homicide, Aggravated Assault, PIC and Recklessly Endangering Another Person charges. Appellant was convicted of Violations of the Uniform Firearms Act, §§ 6106, 6108, and, as previously stated, he pled guilty to § 6105. On October 21, 2019, Appellant was sentenced to an aggregate term of sixteen (16) years to thirty-two (32) years in prison. On October 30, 2019, Appellant filed a Motion to Reconsider Sentence and Post Sentence Motion Combined, and the trial court denied the motion on December 5, 2020.

On January 2, 2020, Appellant filed a timely notice of appeal, and on January 24, 2020, he filed his Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). The trial court who had presided over Appellant's trial, the Honorable Sandy L.V. Byrd, is no longer sitting in the First Judicial District; therefore, the record arrived in this Court without a Pa.R.A.P. 1925(a) Opinion.

Appellant presents the following three issues in his Statement of Question[s] Presented.

[1] Did the court below err and abuse its discretion by handing down a manifestly excessive sentence that exceeds the aggravated range of the sentencing guidelines and giving the maximum sentence allowable by law on each count to run consecutively, tantamount to a life sentence, without giving any reasons for running the sentences consecutively?

[2] Did the court below err and abuse its discretion by exceeding the aggravated range of the sentencing guidelines, giving the maximum sentence allowable by law on each count to run consecutively, tantamount to a life sentence, by relying on improper sentencing factors to justify the upward departure, such as treating mere arrests as proof of criminal conduct, acquitted conduct, and factors already accounted for by the Sentencing Guidelines?

[3] Did the court below err and abuse its discretion by exceeding the aggravated range of the sentencing guidelines, giving the maximum sentence allowable by law on each count to run consecutively, tantamount to a life sentence, without giving due consideration to mitigating factors, such as acceptance of responsibility and remorse, and the rehabilitative needs of the defendant and instead sentenced based only on the severity of the offense?

Appellant's Brief and Appendix at 3. As these questions are interrelated, we will consider them together.

Appellant's issues present challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa.Super. 2007).

As this Court observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa.Super. 2010):

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at

sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** at 170 (citing ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006)).

Herein, Appellant has met the first three requirements of the four-part test. Appellant filed a timely appeal, preserved the sentencing issues in a post-sentence motion, and included a statement raising these claims in his brief pursuant to Rule 2119(f). ***Moury***, 992 A.2d at 170. Therefore, we next determine whether Appellant has raised a substantial question.

"We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Ahmad***, 961 A.2d 884, 886-887 (Pa.Super. 2008). Allowance of appeal will be permitted only when the appellate court determines that there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Hartle***, 894 A.2d 800, 805 (Pa.Super. 2006). A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. ***Id.***

In his Pa.R.A.P. 2119(f) statement, Appellant asserts the trial court abused its discretion when it imposed a sentence in the aggravated range of the Sentencing Guidelines while relying upon impermissible factors, failed to

consider certain mitigating factors, and failed to state sufficient reasons on the record for issuing consecutive sentences. Appellant's Brief and Appendix at 16-17. We conclude Appellant has raised a substantial question. *See Commonwealth v. Pacheco*, 227 A.3d 358, 376 (Pa.Super. 2020) (stating an allegation that the court considered impermissible sentencing factors raises a substantial question); *Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa.Super. 2019) (finding a substantial question where appellant averred trial court failed to consider certain sentencing factors in conjunction with an assertion that the sentence imposed was excessive); *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2015) ("This Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question."). Therefore, we will proceed to address the merits of Appellant's discretionary aspects of sentencing claim and in doing so employ the following standard of review:

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1252–53 (Pa.Super. 2006) (citations omitted).

The Pennsylvania Supreme Court in **Commonwealth v. Walls**, 592 Pa. 557, 568-69, 926 A.2d 957, 964 (2007) determined that a sentence can be deemed unreasonable after a review of the trial court's application of the factors contained in 42 Pa.C.S.A. §§ 9721(b) and 9781(d). Section 9721(b) states:

> [T]he court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation).

42 Pa.C.S.A. § 9721(b).

Section 9781(d) provides that upon appellate review of sentence, this Court must have regard for:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; [and] (4) the guidelines promulgated by the sentencing commission.
> 42 Pa.C.S.A. § 9781(d).

**Commonwealth v. Ventura**, 975 A.2d 1128, 1134-35 (Pa.Super. 2009).

"[L]ong standing precedent ... recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to

sentences already imposed." ***Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa.Super. 2005); ***see also*** 42 Pa.C.S.A. § 9721. We will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently unreasonable." ***Commonwealth v. Gonzalez–Dejusus***, 994 A.2d 595, 599 (Pa.Super. 2010). Moreover, it is well-settled that when the trial court has the benefit of a presentence investigation ("PSI") report, it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein. ***Commonwealth v. Griffin***, 804 A.2d 1, 8 (Pa.Super. 2002).

Appellant maintains the trial court's "all but stated desire was to achieve a specific aggregate sentence that is more like a sentence for Murder in the Third Degree than for firearm possession. In fact, [Appellant's] guidelines for third degree murder would have started at sixteen years at the lowest end of the standard range." Appellant's Brief and Appendix at 20. Appellant states the trial court's lack of analysis as to why consecutive sentences were warranted and its imposition of consecutive sentences for the maximum possible confinement were manifestly unjust and excessive in violation of Appellant's due process rights. ***Id***. at 21-23. Appellant further reasons the trial court impermissibly relied on arrests, acquitted conduct, and factors already accounted for by the sentencing guidelines when fashioning its sentence and gave no weight to Appellant's remorse, mitigating factors or rehabilitative needs. ***Id***. at 26-28, 31-38. Appellant concludes:

> None of these things, the employment, charity work, caregiving, mental health needs, or acceptance of responsibiliy and remorse were weighed and considered by the sentencing judge. [Appellant] defended himself against the decedent, the jury returned a verdict that acknowledged his actions were in self-defense, he apologized to the family of the decedent for his justified actions that led to the death of their loved one, he took responsibility for possessing a gun when he should not have had one, he asked the court for help with his issues and another chance, and the court responded with a life sentence without stating sufficient reasons on the record. The sentencing was unfair and the sentence was excessive and unjust. [Appellant] deserves to be heard and this court should grant a new sentencing.

*Id*. at 38.

The Commonwealth acknowledges Appellant's sentence is in the slightly above aggravated range but argues it was not improper. Brief for the Commonwealth at 11. The Commonwealth stresses the trial court, in concluding Appellant posed a danger to the community and was not amenable to a shorter or probationary sentence, "properly considered [Appellant's] lengthy, violent record, refusal to cooperate with past rehabilitation efforts, previous trauma, repeated supervision violations, and that [Appellant] carried a loaded gun at his side despite being prohibited from possessing one." *Id*.

Notwithstanding Appellant's repeated contention that the trial court merely adopted the Commonwealth's presentation and imposed the "life sentence" it had sought, our review of the October 21, 2019, fifty-page sentencing transcript reveals the court did not do so, nor did it abuse its discretion in fashioning Appellant's sentence. Instead, after hearing extensive argument from both counsel as well as Appellant's own statements at

- 10 -

allocution, the trial court imposed an individualized sentence that took into account Appellant's extensive past criminal conduct, considered his rehabilitative needs as well as the gravity of his offenses, and was consistent with the protection of the public as required by 42 Pa.C.S. § 9721(b).

Initially, the trial court ordered both a PSI and a mental health evaluation of Appellant on July 31, 2019, and had the benefit of both reports at the time of sentencing. The trial court explained it "went through them very carefully" in an effort to "get a full picture" of Appellant. N.T., 10/21/19, at 6, 38.

Moreover, while Appellant avers numerous times in his appellate brief that the trial court essentially sentenced him for a murder of which he was found not guilty, the record belied these assertions. The court stated at the outset of the sentencing hearing the sentence pertained only to violating Sections 6105, 6106, and 6108 of the Uniform Firearms Act, and reiterated Appellant had been found not guilty of all counts of murder, attempted murder and aggravated assault. N.T., 10/21/19, at 4-5. Importantly, the court stressed "[t]he verdict speaks for itself and there was no crime against a person;" therefore, it would not consider victim impact statements [.]" *Id*. at 8-10. Also, when the Commonwealth asked the trial court to consider as a condition of Appellant's sentence payment of funeral costs for S'Brii Davis, the court denied the request and reiterated Appellant had been acquitted in the death of the young man. *Id*. at 31.

The trial court heard extensive argument from both sides. Counsel for Appellant told the trial court that at the outset of the case, Appellant wanted to plead guilty to the gun charges. *Id*. at 13. In urging the court to sentence Appellant within the guidelines and run the sentences currently, defense counsel reminded the trial court that the jury found Appellant acted in self-defense on the day of the shooting. Counsel explained Appellant suffers from PTSD and bipolar disorder, endured a troubled childhood, had been gainfully employed and provided for his community and his family. *Id*. at 14-18.

The Commonwealth stressed the firearms charges have separate elements and do not merge for sentencing purposes. *Id*. at 19-20. The Commonwealth went on to delineate Appellant's criminal history dating back to 2005 when Appellant was a juvenile. *Id*. at 20-24. Prior to the within matter, Appellant was a felon who had been unable to possess a forearm for seven years. *Id*. at 24. The Commonwealth also discussed cases brought against Appellant which were withdrawn when the victims did not come to court. *Id*.

Appellant repeatedly had been in trouble while in prison, and when he was released, his parole officer indicated he had been "in technical violation pretty much constantly." *Id*. at 25-26. In fact, when he committed the within firearms offenses, he had been on parole for a violation of Section 6105 that arose seven years earlier. *Id*. at 27. Stating it did not intend to argue the jury's verdict, the Commonwealth requested a consecutive, aggravated

sentence in light of Appellant's refusal to follow the rules, extensive criminal history, and dishonesty with his parole officer and the presentence investigator about his education and employment. *Id*. at 28.

The following colloquy of the court, during which it was addressing Appellant at the close of the sentencing hearing, evidences its proper consideration of the appropriate factors before sentencing Appellant:

> THE COURT: Mr. Brown, we have individualized sentencing in this Commonwealth. The controlling statutes require that confinement should be imposed consistent with a number of factors including the protection of the public, the gravity of the offense at issue as it relates to the community, as well as your need for rehabilitation.
> Our Courts have required that a sentencing judge consider the sentencing guidelines as well as the history and character of the defendant.
> I must also be mindful of the particular offense at issue.
> The latter is important because I am not sentencing you to charges to which you were acquitted.
> Our Supreme Court has stated, and I paraphrase: Sentencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant, so the trial judge has broad discretion to choose the penalty from the sentencing alternatives and the range of permissible confinements provided the choices are consistent with the protection of the public, gravity of the offense, and the rehabilitation needs of the defendant.
> I must be candid with you, Mr. Brown; I am troubled by your history. And one of the reasons I ordered a presentence and mental health evaluation and go through them very carefully is to get a full picture of the man or woman who is before me.
> In your case, there's four arrests as juvenile but one adjudication, nine arrests as an adult but only five convictions.
> There's much irony in the words "only five convictions." In a civil society, it's problematic when someone is convicted on five separate occasions and finds himself or herself on the public street amongst law-abiding citizens.
> I took a look at the guidelines, which I have given due consideration to, and I went through the cases that went to trial

- 13 -

or where you pled guilty, and they go back to when you were age 17 and adjudicated a delinquent; the very next year, when you were 18, you were arrested for a third-degree felony, eluding police, and given a County sentence.

That first adult conviction placed you in violation of the previous infraction of the law, yet your probation did not result in additional punishment. That was terminated.

Two years later you were before the [c]ourt on a charge of possession with intent to deliver a controlled substance, and you were given yet another County sentence.

Thereafter, when you were age 22, because of the underlying drug conviction when you were found with a gun, you were convicted of violating Section 6105 of the Uniform Firearms Act, which prohibited certain persons from being in possession of a firearm. This was the first time that you received a State sentence.

So you were in violation of your State parole, of violating of – - that resulted from your conviction for violating the 6105 of the Uniform Firearms Act when you were arrested in this case.

There's also an arrest and conviction for assault, for which you also received a County sentence.

So I am struck by the fact that you have this prior drug conviction, drug trafficking conviction, and the prior conviction for violating 6105 of the Uniform Firearms Act.

Counsel, correct me if I'm wrong, I recall your testimony regarding having this gun knowing that you did not have a license; in fact, knowing that you were prohibited from having a license and/or being in possession of this gun at the time of the instant arrest when you talked about your need to carry a gun because there are drug dealers out there and where there are drugs, there are guns.

Now, our Courts have frowned on that interpretation, but those are your words: Where there's drugs, there's guns.

You were not charged with drugs in this case, and I will not sentence you as if you had been.

There is some evidence, Mr. Brown, that you were less than candid when you talked about your educational background and your employment.

You gave the investigator in this case a reason to believe that you were gainfully employed and with something called Brown's Luxury Cleaning, but on analysis, the finding was that's owned by a relative of yours and there was no record of you being gainfully employed.

You told the investigator that you had a GED, but there's no record of that being found.

Now, those are not the most serious violations, but they paint a picture, Mr. Brown, that this Court finds troubling.

One of the things I want to bring to your attention, as I discussed with you, the factors that go into the decision as to what an appropriate sentence would be, is you are a young man who should be totally opposed to being in possession of a firearm. The reports I read indicated that your father was murdered and your brother was murdered.

Yet on the day in question, you were in possession of an unlicensed firearm secreted in a manner, according to your testimony, which provided fast access. It wasn't in the glove box or the console. You had it right down by your side.

I will tell you again, sir, these are troubling aspects of your background.

Also troubling is the nature of your behavior on the rare occasion when you were sentenced to jail for crimes you committed: Fighting in prison, possession of contraband in the prison, being in areas that you weren't supposed to be in, using abusive language towards people in authority. It's impossible for me to look away from that, Mr. Brown.

I have to give some consideration to the presentence investigator's conclusion that you are not amenable to community supervision. I think it's fair to say that over the years you've had every opportunity to rehabilitate yourself and you have not.

I believe it's fair to say that you, with the history of convictions that you've amassed, constitute a threat to the community.

So taking into consideration all those factors that I am obliged to, in fact, consider, drawing on the presentence investigation and the mental health evaluation, the [c]ourt must first tell you that all these charges are – three charges arising from the possession of a single firearm, they are three separate offenses.

6105 prohibits prior offenders, persons convicted of certain felonies, from possessing a firearm.

6106 requires, if you do possess a firearm, you have to have a license.

And 6108 addresses the proliferation of firearms here in the city and county of Philadelphia.

I will tell you quite candidly, Mr. Brown, this is the one aspect of my job I like least of all but I have a duty to you and a

duty to the community and an obligation to my oath that I consider the factors I've articulated.

Having done so, the [c]ourt concludes that the following is an appropriate sentence in this case. Ciston Brown, at CP-51-CR-0003568-2018, on the charge of violation of 6105 of the Uniform Firearms Act, a felony of the first degree, the Court imposes a term of not less than ten years nor more than 20 years of State incarceration.

On the charge of violation of Section 6106 of the Uniform Firearms Act, a felony of the third degree, the [c]ourt imposes a consecutive term of not less than three-and-a-half nor more than seven years of State incarceration.

And on the charge of violation of Section 6108 of the Uniform Firearms Act, a misdemeanor of the first degree, the [c]ourt imposes a term of not less than two-and-a-half nor more than five years of State incarceration.

These sentences and each of them are to run consecutive one to the other for an aggregate term of not less than 16 years nor more than 32 years of State incarceration.

You must pay costs and fees.

And the following conditions are imposed by the [c]ourt: You must enroll in and complete dual diagnosis treatment while in prison, and the Court recommends if you do not complete that therapy that you not be considered for parole.

You must enroll in and complete vocational training, and the [c]ourt recommends that if you don't comply with that condition you not be eligible for parole.

In addition, the [c]ourt is imposing a condition that you enroll in and complete parenting classes in light of the fact that you will at some time get out of jail and you have two children.

That concludes the sentence.

\*\*\*

N.T. Sentencing, 10/21/19, at 37-46.

As the above evinces, the trial court was mindful of both mitigating factors and Appellant's criminal past prior to imposing Appellant's sentence. For example, the court acknowledged the tragedy of Appellant's father and brother's murders, but further observed their deaths should have been a deterrent for Appellant to carry a loaded weapon when he was prohibited from

doing so. In addition, although Appellant posits the trial court relied upon Appellant's prior arrests to enhance his sentence, the trial court noted that he had "only" five convictions, and went on to discuss why it deemed that to be a high amount for an average person. **Id**. at 38-39.

"Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." **Commonwealth v. Radecki**, 180 A.3d 441, 470 (Pa.Super. 2018) (internal citations and quotation marks omitted). Appellant is not entitled to a "volume discount" on his multiple convictions by the imposition of concurrent sentences. **See Commonwealth v. Foust**, 180 A.3d 416, 434-35 (Pa.Super. 2018) **see also Commonwealth v. Hoag**, 65 A.2d 1212, 1214 (Pa.Super. 1995).

As noted above, Appellant's offenses do not merge for sentencing purposes because he was convicted of three distinct firearms charges for illegally possessing a loaded gun on the public streets of Philadelphia. Each of Appellant's convictions required proof of elements separate and distinct from possessing a firearm, *i.e.*, conviction of an enumerated offense, lack of a valid license, carrying a firearm on the public streets or public property of Philadelphia. For instance, 18 Pa.C.S.A. § 6105 does not merely punish one's possession of a firearm; instead, it punishes the possession of a firearm by

certain enumerated persons. ***See Commonwealth v. Gillespie***, 821 A.2d 1221, 1224 (Pa.Super. 2003) ("The clear purpose of § 6105 is to protect the public from convicted criminals who possess firearms, regardless of whether the previous crimes were actually violent or the barrel of the firearm was a certain length.").

Finally, although Appellant posits he has essentially received a "life sentence" for his crimes, this is not so. His consecutive guideline sentence was twelve to twenty-four years in prison, and his maximum consecutive aggravated sentence was 14 ¾ to 29 ½ years in prison. N.T. 10/21/19, at 11-12. While Appellant's aggregate sentence of 16 to 32 years' imprisonment is slightly above the consecutive aggravated range, based on our calculation, he will be approximately forty-six years old when he reaches his minimum sentence.[3] Appellant concedes his sentence is not illegal, and his claim it "affords him no reasonable probability of a meaningful life thereafter" fails. ***Commonwealth v. Anderson***, 224 A.3d 40, 47 (Pa.Super. 2018). Consecutive sentences are not per se "life sentences," especially when the trial court properly exercises its discretion.

After careful review of the record and in light of all the foregoing, we are convinced the trial court fashioned an individualized sentence taking into account all of the statutory factors, the above-stated circumstances of

---

[3] Appellant's date of birth is December 21, 1989.

- 18 -

Appellant's current case, and his criminal history, as well as the significant risk that Appellant poses to public safety when not incarcerated.

Appellant essentially asks this Court to override the trial court's application of these factors and replace it with his interpretation thereof. We reaffirm established precedent that "[w]hen reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." **Commonwealth v. Ventura**, 975 A.2d 1128, 1134 (Pa.Super. 2009). Thus, we ascertain no abuse of discretion in the ultimate sentence imposed by the trial court, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Olson joins the Opinion.

Judge Nichols concurs in the result.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 4/15/2021*