**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD LEE | : | |
| | : | |
| Appellant | : | No. 846 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003820-2019

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JUNE 13, 2023**

Ronald Lee ("Lee") appeals from the judgment of sentence imposed following his convictions for, *inter alia*, third-degree murder, carrying a firearm without a license, and possessing an instrument of crime ("PIC").[1] We affirm.

The trial court aptly summarized the factual and procedural history of this case as follows:

> Around noon on March 18, 2019, [Lee] was hanging out at [the residence of] Wanda Ellis [("Ms. Ellis")] . . . in the Johnson Homes housing development in Philadelphia. [Lee] had been staying at [Ms.] Ellis's house on occasion for over six months. [Lee's] son, Ronell Lee, came over[,] and a physical altercation ensued when Ronell Lee tried to take a cell phone that was charging in the kitchen. [Lee's] girlfriend, Shakira McEachin, claimed the cell phone was hers[,] but Ronell Lee claimed it belonged to him.
>
> [Lee] retrieved a gun that he had hidden under a couch cushion and put it in his pocket. [Ms.] Ellis went into the bathroom

---

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 6106, 907.

to get dressed and heard a "pop" from the living room. [Ms.] Ellis walked into the living room and saw [Lee] standing over his son[,] who was lying on the floor. [Lee] told his son[, "Y]ou better stop disrespecting my space. You should raise up out of here." Shortly after the shooting, Randy Jones [("Jones")] entered the apartment. [Lee] gave the gun to . . . Jones. [Lee] then left [Ms.] Ellis's apartment.

After [Lee] fled, Ronell Lee was gasping for air and asking [Ms.] Ellis for help. Ronell Lee dragged himself from the living room floor to the back door. McEachin, who had left the apartment some time prior to the shooting, called 911 from the courtyard of the housing development. Paramedics arrived and attempted to revive Ronell Lee but were unsuccessful. It was determined that Ronell Lee was killed by a single shot to the abdomen.

When [Lee] left [Ms.] Ellis's house, he went to the home of . . . Jones's mother, Sheila Jones, also in the Johnson Homes development. McEachin met [Lee] at Sheila Jones's house where they watched out the window and eventually called a rideshare service to leave the property. Once [Lee] and McEachin were gone, Sheila Jones went into her son's room and found the revolver that her son had hidden under his mattress. She notified police who recovered the gun from under the mattress later that evening.

After leaving Sheila Jones's house, [Lee] called his cousin's husband, Philadelphia [P]olice [O]fficer Joseph White. [Lee] asked Officer White to meet him at the Hub Motel on Roosevelt Boulevard. When Officer White arrived at the hotel, [Lee] confessed to shooting Ronell Lee. [Lee] asked Officer White to give him some time to turn himself in. Officer White told [Lee] that he would do so. However, as soon as Officer White left the hotel room, he called his lieutenant and then 911.

When police responded to the Hub Motel, [Lee] and McEachin were walking through the parking lot[,] and Officer White pointed them out to the police. [Lee] had changed his clothes since he had spoken with Officer White[,] and his original clothes were later discovered in a trashcan in the hotel hallway. While in police custody, [Lee] gave a statement admitting to the shooting.

* * * *

At [a non-jury] trial, the Commonwealth presented the testimony of[, *inter alia*,] . . . [O]fficer[] White, . . . and civilians Sheila Jones, [Ms.] Ellis, and Natalie Murphy. [Lee] testified on his own behalf [and claimed that his son was under the influence of narcotics when the two began arguing over the cell phone, and that, after Lee retrieved the gun, the two struggled over it, during which the firearm inadvertently discharged and accidentally struck Ronell Lee].

* * * *

On November 12, 2021, following [the] non-jury trial . . ., [Lee] was convicted of[, *inter alia*,] murder of the third degree . . ., carrying a firearm without a license . . ., . . . [and PIC] . . .. On January 28, 2022, the [trial c]ourt imposed a term of [twenty] to [forty] years [of] incarceration for murder of the third degree, a consecutive term of two to four years [of] incarceration for carrying a firearm without a license, and concurrent terms [of incarceration for related offenses], for an aggregate sentence of [twenty-two] to [forty-four] years [of] incarceration. [Lee] filed a post-sentence motion, which the [trial c]ourt denied on March 10, 2022.

Trial Court Opinion, 5/10/22, at 1-4 (footnotes and citations to the record omitted; paragraphs reordered for clarity). Lee filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Lee raises the following issues for our review:

1. Should [Lee's] judgment of sentence be vacated because the Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that [Lee] did not act in justifiable self-defense when, *inter alia*, [Lee] was in his residence when confronted by [the] bigger and criminal [Ronell Lee] [*sic,*] who was aggressive and under the influence of narcotics and was attempting to steal [Lee's] property?

2. Should [Lee's] . . . judgment of sentence [for carrying a firearm without a license] be vacated because the Commonwealth did not present any[,] or sufficient[,] evidence to prove beyond a

- 3 -

reasonable doubt that [Lee] concealed a firearm on his person outside of his abode?

3. Did the trial court abuse its discretion in denying [Lee's] post[-]sentence [m]otion because [his] conviction[s are] against the weight of the evidence as to many of the charges[,] and a new trial should be ordered because, *inter alia*, [Lee] was in his residence when confronted by the bigger and known [victim, Ronell Lee,] who was aggressive and under the influence of narcotics and was attempting to steal [Lee's] property?

4. Did the trial court abuse its discretion in sentencing [Lee] to a maximum sentence for [m]urder in the [t]hird [d]egree with a consecutive . . . sentence [for carrying a firearm without a license,] when, *inter alia*, there was, at a very minimum, some provocation by [Ronell Lee], when the tragic death of [Lee's] son constitutes punishment by itself, when [Lee] was in the middle of his life and would not pose a danger to the community upon release, and when [Lee] had significant support in the community?

Lee's Brief at 4-5 (issues re-ordered for ease of disposition).

In his first two issues, Lee challenges the sufficiency of the evidence underlying his convictions for third-degree murder and carrying a firearm without a license. Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying

- 4 -

the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lowry*, 55 A.3d 743, 751 (Pa. Super. 2012) (internal citation omitted).

Lee, in his first issue, challenges the sufficiency of the Commonwealth's evidence to disprove self-defense. The third-degree murder occurs upon "the killing of an individual with malice." *Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021), *appeal denied*, 282 A.3d 1122 (Pa. 2022), *cert. denied sub nom. Jones v. Pennsylvania*, 143 S. Ct. 469 (2022). This Court has stated that "malice" includes "not only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious bodily harm." *Id*. (citations omitted).

This Court has explained that self-defense can be a complete defense or, alternatively, an "imperfect" defense:

> Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury[, kidnapping, or sexual intercourse compelled by force or threat,] and that it was necessary to use deadly force to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. [*See*] 18 Pa.C.S.[A.] § 505(b)(2) . . .. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by

proving that at least one of those three elements is absent. If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense. [**See**] 18 Pa.C.S.[A.] § 2503(b).

The finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense. Disbelief of the defendant's testimony, however, is not sufficient to satisfy the Commonwealth's burden to disprove self-defense absent some evidence negating self-defense.

*Id*. (some internal citations omitted). Furthermore, "[p]roof that the defendant was able to safely retreat [may be] sufficient to satisfy the Commonwealth's burden of disproving both self-defense and imperfect self-defense." *Id*. (citing, *inter alia*, 18 Pa.C.S.A. § 505(b)(2)(ii)). Lastly,

the defense of self-defense necessarily requires that the appellant admit that the shooting was intentional in order to protect one's self. *. . .* However, when [a defendant takes] the stand and denie[s] that the shooting was intentional and, instead, said it was caused by mistake or accident . . ., he denie[s] that the act was done intentionally in defense of self. Under such circumstances, therefore, a defense of self-defense is not available to such a person because it is mutually exclusive of the defense of accident or mistake.

*Commonwealth v. Harris*, 665 A.2d 1172, 1175 (Pa. 1995) (citations omitted).

Lee argues the evidence was insufficient to disprove his assertion of self-defense. Lee maintains that his "actions were justified[,] even if there was not a specific self-defense theory of the case presented." Lee's Brief at 18.

According to Lee, he "presented evidence that he was confronted by an aggressive individual on drugs while [he, Lee,] was in his[, Lee's,] residence. The ensuing struggle constitutes justification," and "[t]here was not sufficient evidence presented that [Lee] did not act in self-defense or, at most, mistaken self-defense." *Id*. at 27.

The trial court considered this issue and determined that it is meritless:

Here, self-defense was never at issue. Defense counsel made this clear during his closing argument:

I'm not arguing self-defense to this [c]ourt because I don't believe that there is a self-defense in this particular case. There is no evidence that sustains Ronell Lee having any kind of weapon, whether it was a firearm or anything else that could be characterized as a weapon. So, we're not arguing self-defense in this case.

N.T.[,] 11/12/[21,] at 195.

Moreover, during his testimony at the trial, [Lee] never contended that he shot his son in self-defense. Rather, he consistently maintained that his son was accidentally shot when the gun went off during a struggle. [Lee] even denied that his finger was on the trigger of the weapon when it fired. [**See**] N.T.[,] 11/12/[21,] at 76-79[,] 159-60. Where, as here, a defendant claims that a shooting was accidental, self-defense is not at issue in the case. *. . ..*

Because the defense did not raise a claim of self-defense during the trial, the Commonwealth was under no obligation to present evidence to disprove that defense. No relief is due.

Trial Court Opinion, 5/10/22, at 5.

Following our review, we conclude that Lee failed to present evidence of self-defense, or imperfect self-defense, and, accordingly, the Commonwealth was not required to disprove either defense. At trial, Lee repeatedly testified

that he did not intend to shoot Ronell Lee and denied that he had shot his son. Lee testified, "The gun was never to hurt my son or to fire off, shoot, none of that." N.T., 11/12/21, at 77. He further stated that he retrieved the gun and showed it to Ronell Lee, though he did not threaten his son, and it was while "we was tussling [that] the gun goes off . . .." *Id*. at 79-80. Lee further testified that, "[a]fter the gun goes off, my son, he went down. I went down[,] but not to the floor, because when the gun goes off, I ain't know what happened. I just know the gun went off." *Id*. at 81. Lee denied that he pointed the firearm at his son and shot him. *See id*. at 97. He also denied he had the intention to "cause any kind of harm" to Ronell Lee. *See id*. Lee additionally denied that he had cocked the gun or put his finger on the trigger. *See id*. at 148. Lastly, Lee testified that "[N]one of this was, like, me intentionally to use no gun for my son to get hurt, to get killed, to get shot." *Id*. at 191. Thus, Lee sought to establish, by his testimony, not that he intentionally shot his son based on the reasonable or unreasonable belief that he was in imminent danger; rather, he sought to establish the defense of accident. *See Harris*, 665 A.2d at 1175 (holding that the defense of self-defense necessarily requires that the appellant admit that the shooting was intentional in order to protect oneself, and that the defense of accident is mutually exclusive with self-defense). Accordingly, the Commonwealth was not obliged to put on evidence to disprove self-defense. Thus, Lee's first issue merits no relief.

Lee next challenges the sufficiency of the evidence underlying his conviction for carrying a firearm without a license. A person who "carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license" commits the offense of carrying a firearm without a license, a third-degree felony. 18 Pa.C.S.A. § 6106(a)(1). Our Supreme Court has defined a "place of abode" as follows:

> When interpreting a statute, words that are not defined in the statute shall be construed according to their common and approved usage. [*See*] 1 Pa.C.S.[A.] § 1903(a). Black's Law Dictionary defines "place of abode" as "[o]ne's residence or domicile." Black's Law Dictionary 1149 (6th [ed.] 1991). Black's further defines domicile as "a person's legal home," [*id*. at] 485, and residence as a "place where one actually lives or has a home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house." [*Id*. at] 1309. Finally, Black's defines dwelling as "the **house or other structure** in which a person or persons live; a residence; abode; habitation; the **apartment** or building, or group of buildings, occupied by a family as a place of residence. **Structure** used as a place of habitation." [*Id*. at] 505 (emphasis added). In addition, the Dictionary of Modern American Usage defines "place of abode" as "a pretentious way of referring to someone's **home** or **house**." The Dictionary of Modern American Usage 5 (1998) (emphasis in original).

*Commonwealth v. Ortiz*, 738 A.2d 403, 404–05 (Pa. 1999).

Lee contests the sufficiency of the evidence for his firearms conviction, specifically, because "[t]here was no evidence that [he] ever concealed the firearm at issue once [he] left his residence." Lee's Brief at 29. Lee maintains he brought the firearm into his residence more than five days before the shooting, and, because the bill of information specified that the offense

occurred "on or about March 18, 2019, the day of the shooting," the information was insufficient to allow him to "prepare[] to address this issue" at trial. *Id*.

The trial court considered this issue and determined it merited no relief. As that court explained:

> In this case, [Lee] failed to identify any surprise or prejudice occasioned by the difference of only a few days from the date in the information and the date of the alleged violation. The alleged violation occurred when [Lee] secured and transported the murder weapon to the location of the murder, and therefore, was an integral part of the events at issue in the murder case. There was never a claim made that the date of the firearms offenses was an essential element of the crimes charged. Moreover, the explicit qualification in the information that the offense occurred "on or about" the date alleged alerted [Lee] to the possibility of the discrepancy of a few days such as occurred here.
>
> Accordingly, as [Lee] admitted to carrying the gun used to kill his son concealed in his pocket outside of his home around five days from the day of the murder, without a license to do so, the evidence was legally sufficient to support his conviction . . ..

Trial Court Opinion, 5/10/22, at 8. Additionally, the Commonwealth contends that Lee "admitted at trial that[,] on two different occasions[,] he had concealed a gun on his person," the first of which was when Lee "put a gun in his pocket moments before shooting his son in [Ms.] Ellis's home, which was not his place of abode." Commonwealth's Brief at 9 (citation omitted).

Following our review, we conclude the evidence, in the light most favorable to the Commonwealth as the verdict-winner, was sufficient to prove that Lee carried a concealed firearm outside of his place of abode. The shooting occurred at 1810 North 25th Street, the residence of Ms. Ellis. ***See***,

*e.g.*, N.T., 11/12/21, at 49. Ms. Ellis testified that nobody else lived at the property with her. *See* N.T., 11/10/21, at 126. She described Lee's girlfriend, Shakira McEachin, as an unofficial "home care aide," and stated that Lee was "just a neighbor. He lives in the neighborhood," in an apartment behind her own apartment. *Id*. at 132. Occasionally, Lee or McEachin would stay over at Ms. Ellis's apartment. *See id*. at 132-33. Ms. Ellis emphasized however, that at the time of the shooting, she lived there alone; and no one was staying with her "at the time this incident happened," either permanently nor temporarily. *Id*. at 164-65.[2] While at Ms. Ellis's residence, Lee took the firearm out from under a couch cushion and put it in his pocket, thereby concealing it. *See* N.T., 11/12/21, at 76-77 (Lee testifying that he took the gun from the couch and put it in his pocket); *see also id*. at 147 (Lee testifying that he put the gun in his sweatpants pocket).[3] As the evidence, in

_____

[2] Further, Lee gave a statement to police on the night of the incident in which he claimed to live with his grandmother. *See* N.T., 11/12/21, at 100-01.

[3] We are mindful that Ms. Ellis's testimony at the preliminary hearing was less than a paragon of clarity in that she stated then that Lee and McEachin had stayed with her for seven months prior to March 18, 2019. *See*, *e.g.*, N.T., 11/10/21, at 169 (Ms. Ellis testifying at trial, contrary to her prior testimony at the preliminary hearing, that she did not remember Lee and McEachin staying with her for seven months prior to March 18, 2019). We also note that Lee testified that he lived with Ms. Ellis at the time of the shooting. *See* N.T., 11/12/21, at 49. However, our standard of review prohibits us from re-weighing the evidence and substituting our judgment for that of the fact-finder; further, the trier of fact passes on credibility and is free to believe all, part, or none of the evidence. *See Lowry*, 55 A.3d at 751.

the light most favorable to the Commonwealth, established that Lee did not live with Ms. Ellis at the time he placed the firearm inside his sweatpants pocket, the evidence was sufficient to prove that Lee was outside of his place of abode when he concealed the weapon. Accordingly, Lee's second issue merits no relief.[4]

In his third issue, Lee asserts that his convictions for third-degree murder, PIC, and "the main firearms convictions" were against the weight of the evidence. As Lee addresses the weight of the evidence for his convictions together, we do the same. We have articulated our standard of review for weight claims as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of

---

[4] As we resolve this issue based on the sufficiency of the evidence showing that Lee concealed a firearm about his person the day he shot Ronell Lee, we need not address Lee's assertion that, because of the vagueness of the bill of information, he was unable to prepare a defense to evidence showing he concealed a firearm about his person five days prior to the shooting.

review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citation omitted). To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court. *See id*.

Lee contends his convictions were against the weight of the evidence, as "there was an unrebutted self-defense theory of the case presented[;] because [Lee] did not possess the instrument at issue with intent to employ it criminally[;] and because there was no evidence that [he] concealed a firearm when it was removed from the residence where the shooting occurred." Lee's Brief at 15. Specifically, Lee argues the weight of the evidence is against a conviction for third-degree murder "because of justification," and, once that charge is vacated, the PIC conviction must also be vacated. *See id*. at 17.

The trial court considered Lee's weight claims vis-à-vis his third-degree murder and PIC convictions, and it determined they were meritless because, *inter alia*, "justification was not a defense asserted in this case." Trial Court Opinion, 5/10/22, at 9. Based on our review, we discern no abuse of discretion by the trial court. Lee challenges the weight of the evidence for the murder and PIC convictions based on his "unrebutted self-defense theory of the case." Lee's Brief at 15, 17. However, as we noted above, Lee did not present self-

defense evidence at trial, and, moreover, he expressly denied he intended to shoot his son. Accordingly, his assertion that he presented "unrebutted self-defense" evidence is meritless. Therefore, his challenges to the murder and PIC convictions, based on self-defense, warrant no relief.

Lee, additionally, challenges the carrying a firearm without a license conviction based on the weight of the evidence because "there was no evidence that [he] ever concealed the firearm at issue once [he] left his residence," and, instead, he testified that he brought the firearm to his residence five days before the shooting. *Id*. at 17. As we explained above, however, Ms. Ellis testified unequivocally that Lee lived neither permanently nor temporarily with her at the time of the shooting. Just before the shooting, Lee, while in her apartment, concealed the firearm in his sweatpants pocket. Lee's argument is, essentially, that the trial court should have disbelieved Ms. Ellis's testimony and instead believed his. However, a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *See Windslowe*, 158 A.3d at 712.[5] Lee has thus failed to show the trial court abused its

_____

[5] We further reiterate, as noted above, that Lee had given a prior inconsistent statement to police in which he stated he lived with his grandmother, not Ms. Ellis. Moreover, while Ms. Ellis's prior testimony at Lee's preliminary hearing could be interpreted inconsistently with her trial testimony, any conflict was for the fact-finder to resolve.

discretion in concluding that its verdict was not so tenuous, vague and uncertain that it shocks the conscience. ***See id***. He is therefore due no relief.

In his last issue, Lee challenges the discretionary aspects of his sentence. This Court has explained that challenges to the discretionary aspects of sentencing are not appealable as of right, but, rather,

> an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Padilla-Vargas***, 204 A.3d 971, 975 (Pa. Super. 2019) (citation omitted; brackets in original); ***see also*** 42 Pa.C.S.A. § 9781(b).

Regarding the requirement that an appellant raise a "substantial question," this Court has explained:

> A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process.

***Commonwealth v. Brown***, 249 A.3d 1206, 1211 (Pa. Super. 2021) (internal citation omitted). "The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004). Where an "appellant argues that the lower court inappropriately applied correct

- 15 -

information when imposing sentence[, he or she] is effectively asking this [C]ourt to substitute [its] judgment for that of the lower court, [and has thereby] failed to present us with a substantial question . . ..” ***Commonwealth v. Rivera***, 637 A.2d 1015, 1017 (Pa. Super. 1994).

Here, Lee timely appealed from the March 10, 2022 denial of his post-sentence motion. **See** Notice of Appeal, 3/19/22. Further, Lee technically complied with Pa.R.A.P. 2119(f) by including a separate section of his brief setting forth the reasons underlying his petition for an allowance of appeal regarding the discretionary aspects of his sentence. **See** Lee's Brief at 30-32. We next consider whether Lee properly preserved his issue below, and, if so, whether he has presented a substantial question for our review.

In his Rule 2119(f) statement, Lee argues his sentence “exceeds a justifiable sentence needed to protect society[,] especially because [he] was 41 years of age at the time of sentencing”; the trial court ignored his “potential for rehabilitation”; he did not “exhibit the coldness of disposition associated with malice” in shooting his son; and, though he concedes his sentence is a “guideline sentence,” he maintains “the guidelines are extremely broad,” considering he waived his right to a jury trial and received a consecutive sentence for the carrying firearms without a license conviction. **See** Lee's Brief at 31-32. However, the only sentencing issues Lee raised in his post-sentence motion were that the sentence for the third-degree murder conviction was excessive given: his prior record score of two and lack of “prior

convictions for the commission of any violent crime"; and the fact that he "presents no threat to the community." Lee's Post-Sentence Motion, 2/2/22, at ¶¶ 5(a)-(b). Lee raised the same grounds vis-à-vis his consecutive sentence for carrying a firearm without a license. *See id*. at ¶ 5(c).[6] Lee's preserved challenge is thus limited to his claim of excessiveness based on his prior record score of two, lack of prior convictions for violent offenses, and his asserted lack of threat to the community.[7] This does not raise a substantial question. Lee does not argue that the trial court violated a particular provision of the Sentencing Code or that his sentence is contrary to the fundamental norms underlying the sentencing process. *See Brown*, 249 A.3d at 1211 (stating that an appellant must set forth a *plausible argument* that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process). Instead, Lee asks this Court to substitute its judgment for the trial court's, and has, thus, failed to raise a substantial question. *See Rivera*, 637 A.2d at 1017.

---

[6] Lee filed a second post-sentence motion two days later that was identical in this respect to the first. *See* Lee's Post-Sentence Motion, 2/4/22.

[7] *Cf*. *Padilla-Vargas*, 204 A.3d at 975 (requiring that challenges to the discretionary aspects of sentencing be preserved at sentencing or in a post-sentence motion); Pa.R.A.P. 302(a) (providing that issues not raised below are waived and may not be raised for the first time on appeal).

Accordingly, we decline to review Lee's challenge to the discretionary aspects of his sentence.[8]

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2023

_____

[8] Even if Lee raised a substantial question, he would be due no relief. Our standard of review for such issues is well-settled: "[S]entencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion[, which] involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment." **Brown**, 249 A.3d at 1211. Here, the trial court, having reviewed a presentence investigation report, imposed a guideline-range sentence. **See** N.T., 1/28/22, at 4-5; **accord** Trial Court Opinion, 5/10/22, at 12-13; **see also Commonwealth v. Akhmedov**, 216 A.3d 307, 329 (Pa. Super. 2019) (stating that "[w]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors"). Additionally, the trial court considered the required sentencing factors, acknowledged that Lee would not be a threat to the public, but also explained that its sentence took into account other statutory factors, including the gravity of the offense, specifically, the fact that Lee introduced a gun into a dispute following his son "disrespect[ing] him," and that he left his victim "lying there mortally wounded without rendering aid, without calling for help[,] and just taking off in an effort to protect himself, that's just depraved conduct . . .." N.T., 1/28/22, at 64. Lee has failed to show a manifest abuse of discretion by the trial court.