J-S28022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFREY ALAN MATTA | : | |
| | : | |
| Appellant | : | No. 3168 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 6, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002096-2019

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:         **FILED AUGUST 30, 2024**

Jeffrey Alan Matta (Appellant) appeals from the judgment of sentence entered following his guilty plea to six counts of involuntary deviate sexual intercourse (IDSI); and one count each of intimidation of witnesses or victims, aggravated indecent assault, sexual abuse of children (photographing, videotaping, depicting on computer, or filming sexual acts), corruption of minors, and endangering the welfare of a child.[1] This case returns to us following our reversal of Appellant's judgment of sentence and remand for re-sentencing. ***See Commonwealth v. Matta***, 296 A.3d 579, 1315 EDA 2022 (Pa. Super. 2023) (unpublished memorandum). After careful consideration, we affirm.

---

[1] 18 Pa.C.S.A. §§ 3123(a)(7), 4952(a)(1), 3125(a)(8), 6312(b)(2), 6301(a)(1)(ii), and 4304(a)(1).

This Court previously described the history underlying Appellant's appeal:

Over a period of almost two (2) years, between approximately January 1, 2017, and November 30, 2018, [Appellant] engaged in a sexual relationship with his 15-year-old stepdaughter, A.T., consisting of multiple sexual acts on multiple occasions. He continued to do so even after charges were filed against him.[FN1]

[FN1] A separate criminal case was filed against [Appellant, at trial court docket number at 4406-18,] prior to the instant one. There, he pled guilty to corruption of minors and endangering the welfare of a child. The court imposed an aggregate sentence of 1 to 3 years.

Additionally, while this case was being investigated, [Appellant] pressured A.T. about what she should say to the detective and district attorney. [Appellant] asked [A.T.] what she said to [the authorities,] and told her to get her story straight. [Appellant] was arrested and charged with numerous offenses.

On September 30, 2021, [Appellant] entered an open guilty plea to [the above-described charges].

On January 27, 2022, following a hearing, the trial court sentenced [Appellant] to 10-20 years' incarceration for each count of IDSI[,] to be served concurrently. Additionally, the court imposed the following sentences of incarceration: 5-10 years for aggravated indecent assault, 3-6 [years] for intimidation of witnesses or victims, 1-2 years for sexual abuse of children, and 1-2 years for corruption of minors, all to run consecutive to the IDSI sentence and each other. Lastly, the court sentenced [Appellant] to 1-2 years' incarceration for endangering the welfare of a child, to run concurrently with the sentence for corruption of minors. The aggregate sentence was 20 to 40 years' incarceration. [Appellant] filled a post-sentence motion, which the trial court denied.

*Matta*, 296 A.3d 579 (unpublished memorandum at 1-3) (one footnote in original; one footnote omitted).

Appellant timely appealed, claiming his maximum aggregate sentence of 40 years in prison constituted an abuse of discretion, because (1) the trial court improperly based its sentence solely on the seriousness of the offenses; and (2) one of the consecutive sentences deviated above the aggravated range of the sentencing guidelines without an adequate explanation. *Id.* (unpublished memorandum at 3). The Commonwealth conceded the trial court may have imposed an illegal sentence for Appellant's aggravated indecent assault conviction. *Id.* The Commonwealth explained it had misadvised the trial court that a conviction under 18 Pa.C.S.A. § 3125(a)(8) requires a mandatory minimum sentence of five years in prison. *Matta*, 296 A.3d 579 (unpublished memorandum at 3).

Ultimately, this Court agreed that the imposition of a mandatory minimum sentence for Appellant's aggravated indecent assault conviction would constitute an illegal sentence. *Id.* (unpublished memorandum at 5). However, because the trial court failed to indicate whether it had imposed a mandatory minimum sentence, we concluded a remand was necessary to ascertain the trial court's sentencing intentions. *Id.* (unpublished memorandum at 5-6).

We further concluded the trial court's imposition of the mandatory minimum sentence required by 42 Pa.C.S.A. § 9718(a)(1) constituted an

illegal sentence. ***Matta***, 296 A.3d 579 (unpublished memorandum at 7).[2]

Accordingly, we reversed Appellant's judgment of sentence in its entirety and

remanded for resentencing. ***Id.*** (unpublished memorandum at 6). We

declined to address Appellant's remaining discretionary sentencing challenges.

***Id.*** (unpublished memorandum at 5 n.3).

On July 6, 2023, on remand, the trial court resentenced Appellant as

follows:

COUNT 1 (IDSI) - 5½ to 11 years in prison.

COUNT 2 (IDSI) - 5½ to 11 years in prison, to be served consecutively to the sentence at Count 1.

COUNTS 3-6 (IDSI) - 5½ to 11 years in prison, to be served concurrently with each other and with the sentence imposed for Count 2.

COUNT 63 (intimidation of a victim) – 3 to 6 years in prison, to be served consecutively to the sentence at Count 2.

COUNT 64 (aggravated indecent assault) – 2 to 4 years in prison, to be served consecutively to the sentence at Count 63.

COUNT 94 (sexual abuse of a child/photographing sexual acts) – 1 to 2 years in prison, to be served consecutively to the sentence at Count 64.

COUNT 97 (corruption of minors) – 1 to 2 years in prison, to be served consecutively to the sentence at Count 94.

COUNT 98 (endangering the welfare of a child) – 1 to 2 years in prison, to be served consecutively to the sentence at Count 97.

---

[2] ***See Commonwealth v. Wolfe***, 140 A.3d 651, 663 (Pa. 2016) (concluding 42 Pa.C.S.A. § 9718 "is irremediably unconstitutional on its face, severable, and void.").

*See* Sentencing Order, 7/6/23. Thus, the trial court sentenced Appellant to an aggregate prison term of 19 to 38 years, and a consecutive three years of probation in accordance with 42 Pa.C.S.A. § 9718.5(a).[3]

Appellant timely filed a post-sentence motion, which the trial court denied. Thereafter, Appellant filed the instant timely appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our consideration:

> Was the aggregate sentence of 19 to 38 years [of] imprisonment imposed by the trial court contrary to the fundamental norms of the sentencing process in that it was unduly harsh since the length of the sentence was excessive and was based exclusively on the facts of the instant case[,] while failing to give adequate consideration of [Appellant's] genuine display of remorse, heartfelt apology, and acceptance of responsibility?

Appellant's Brief at 5.

Appellant challenges the discretionary aspects of his sentence. We consider a challenge to the discretionary aspects of a sentence to be a petition for permission to appeal, as the right to pursue such a claim is not absolute. *Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super.

_____

[3] Section 9718.5(a) provides:

> A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court.

42 Pa.C.S.A. § 9718.5(a).

- 5 -

2010). Before we can consider a discretionary sentencing challenge, we conduct a four-part analysis determining

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted).

Instantly, Appellant filed a post-sentence motion for reconsideration, a timely notice of appeal, and included in his brief a Rule 2119(f) statement. In his Rule 2119(f) statement, Appellant claims the trial court's 38-year sentence is "manifestly excessive as it is too severe a punishment for the individual circumstances[.]" Appellant's Brief at 12. Appellant asserts he will be 77 years old when his prison term maximum sentence expires. *Id.* at 12-13. Appellant argues his sentence

> is essentially a life sentence – it cannot be assumed that he will be paroled, *see Commonwealth v. Coulverson*, 34 A.3d 135, 148 (Pa. Super. [] 2011) – which is unduly harsh considering the nature of the crimes and the fact that he was found not to be a risk to reoffend. (N.T.[,] 1/27/22, at p. 37).

*Id.* at 13.

A claim that a sentence is excessive, even if it is within the statutory limits, can raise a substantial question for appellate review. *Commonwealth v. Mouzon*, 812 A.2d 617, 624 (Pa. 2002). We conclude Appellant has raised

a substantial question. *See id.* Accordingy, we address Appellant's challenge to his sentences as manifestly excessive.

Appellant argues that the trial court's sentence of an aggregate 19 to 38 years in prison is unduly harsh. Appellant's Brief at 15. Appellant claims the trial court abused its discretion "because it based its sentence on the seriousness of the crimes alone in sentencing [him] to 38 years of incarceration." *Id.* at 17. While the trial court recognized that a life sentence is not appropriate, the trial court also acknowledged the unlikeliness of Appellant being paroled. *Id.* Appellant asserts that,

> [w]hile not literally a life sentence, it cannot seriously be said that one has much life to live after the age of seventy-seven[,] where the previous 38 years were spent in a state correctional facility. To say otherwise is completely disingenuous and such a sentence is an abuse of discretion under the facts of this case.

*Id.* at 17-18.

Appellant directs our attention to the July 6, 2023, sentencing transcript. *Id.* at 18. According to Appellant, the transcript demonstrates the trial court improperly focused almost exclusively on the facts of this case in imposing sentence. *Id.* at 18-19 (citing N.T., 7/6/23, at 32-33). Appellant asserts that the sentence constituted an abuse of discretion, "because [Appellant] was found to be a low risk for reoffending and had a prior record score of zero." *Id.* at 19. Appellant argues,

> because of [the trial court's] myopic focus on the severity of the offenses, the trial court completely disregarded these facts and sentenced [Appellant] to what very well may be the rest of his life in prison, which is inconsistent with [42 Pa.C.S.A. §] 9721(b).

> While the conduct for which [Appellant] was convicted was certainly damaging to all those involved, preventing any chance of rehabilitation by incarcerating him for 38 years will not undo those acts and does not fit the crimes….

*Id.*

We review Appellant's issue under the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (quoting *Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted)). "[W]hen imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Mulkin*, 228 A.3d 913, 917 (Pa. Super. 2020).

At sentencing,

> the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.

*Bankes*, 286 A.3d at 1307 (quoting *Clemat*, 218 A.3d at 959-60 (citations omitted)).

In reviewing the record, this Court "shall have regard for"

- 8 -

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Each of Appellant's sentences are within the standard range of the sentencing guidelines. *See* N.T., 7/16/23, at 34-35 (the trial court recognizing its intention to impose standard-range sentences). When we review a challenge to the discretionary aspects of a standard-range sentence, this Court must affirm the sentence unless the appellant demonstrates that "application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2).

Here, the trial court had the benefit of a presentence investigation report (PSI). *See* N.T., 7/16/23, at 5 (the trial court stating it had ordered a PSI and inquiring whether counsel had reviewed it). "When … the trial court has the benefit of a pre-sentence report (PSI), we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." *Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014).

As to consecutive sentences, "[l]ong standing precedent ... recognizes that [the Sentencing Code] affords the sentencing court discretion to impose

its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa. Super. 2005). We will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently unreasonable." ***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 599 (Pa. Super. 2010).

Instantly, the trial court explained its reasons for sentencing Appellant to consecutive prison terms:

> In imposing sentence upon [Appellant], the [c]ourt considered the sentencing guidelines, the impact of [Appellant's] actions upon the victim, A.T., the protection of society, and the rehabilitative needs of [Appellant]. The sentence imposed for each of the counts to which [Appellant] pled guilty is within the standard range of the sentencing guidelines, as set forth by the Commonwealth during resentencing.
>
> In the victim impact letter read to the [c]ourt by A.T., she revealed the extent of [Appellant's] manipulation and depravity imposed upon her and the everlasting impact of [Appellant's] actions on her. [A.T.'s letter stated:]
>
>> The abuse started when I was 15.
>>
>> I always seemed to see the good in everyone I met. Even if they were bad, I would listen to try to help. [Appellant] took advantage of my age, my state of mind, my broken self. He took it all.
>>
>> Around this time, I noticed that [Appellant] began to pay more attention to me. My mom encouraged me to ask him to teach me how to play guitar. It was a common interest we shared. So I did exactly that. I loved it at the time.

- 10 -

[Appellant] then made a choice that has me [*sic*] altered me for life, like many others. After I had gotten done playing guitar with him — this was before the abuse started — I went up to my room to study for a history test. I heard him pack up his guitar not too long after I went upstairs. I figured he was done playing. I heard him come up to the steps and go upstairs to his room. He came back down and knocked on my door. As he came in, he asked me what I was doing, and I told him I was studying. Then he pulled out a vibrator and asked if I ever used one before. I shook my head no. He then puts it in his back pocket. He left and came back a second time with his sex toy and said, see, I use one, too. Then he stuck his fingers in it. I was speechless. I didn't even know what to say, or even have the understanding of what just happened. He left and came back a third time and tried to kiss me on the lips. I quickly turned my head, and he ended up kissing my cheek. This was the start.

….

The day of February 10, 2017, is when I lost everything. [Appellant] had groomed me for weeks at this point. I had tried my hardest to resist his traps and coercing. The room was cold and dark. It felt like the longest minutes of my life. I felt all the worst feelings at once. On the way home [after the assault], [Appellant] grabs my hand and asks if I'm okay. I remember looking at him and telling him I was scared and nervous, and I felt terribly guilty. He assured me that he felt guilty, too, but that it already happened so we can't do much now, and that we have to keep mom happy. That was [Appellant's] favorite phrase. He made it my responsibility, as well, to keep mom happy. It didn't matter if I was suffering. I had to act like a normal daughter, as instructed by [Appellant], to keep our secret safe.

….

He never wanted to take any blame. He always pointed the finger at someone else….

….

One of the most traumatizing events I've endured by [Appellant] happened when I was 16 or 17. [Appellant] had been abusing me at this time like many others, except it wasn't. During the intercourse, [Appellant] had penetrated my rectum with a sex toy. I repeatedly told him not to, but he did it anyway. I grabbed my things, and I went down to my room while crying. He came down to my room and proceeded to give me oral sex, even though I was still crying and telling him to stop. I recall he said to me, let me just do this for you, can you stop crying now?

….

(N.T., Sentencing, 1/27/22, at 7-12).

At the original sentencing, after listening to the victims' impact statements and [Appellant's] statement, as well as argument of counsel, the [trial court] set forth its reasoning for the sentence imposed:

The [trial c]ourt: It is hard to find words to describe how heinous [Appellant's] actions are and were. And clearly, the impact of [Appellant's] actions were not just affecting the victim but the victim's family. And in some ways, it's hard to resist the Commonwealth's urging to impose maximum penalties. But, in my mind, that is not fair. I certainly, effectively, realize that the Commonwealth is asking me to impose a life sentence. That's just not appropriate here.

Nonetheless, I have to consider the [sentencing] guidelines.... And I have to consider [Appellant's] conduct, and I have to consider a prior record, all of which are in the guidelines. And they're factored into the sentence here.

But I do believe that, as I indicated, there needs to be a balance of the impact of [Appellant's] actions with consideration of the guidelines and a balancing of the needs of society, and the need to consider the seriousness of the charges.

And I do believe that the sentences have got to reflect the need for society not to have [Appellant] in society for some

- 12 -

time, and to give some peace to the victims that he will not be on the street for some time.

I'm also very mindful that, as has happened in the first sentence [ccc] that [Appellant] received, at least under the current modus of operation of the state penal system, defendants such as [Appellant] are rarely paroled. Sentences that are imposed for such offenses here are usually max'd out or close to. And I've factored that into my thinking with regard to the sentence.

(N.T., 1/27/22, Sentencing, at 36-38).

Trial Court Opinion, 2/7/24, at 8-10 (footnotes omitted). The trial court considered these reasons in resentencing Appellant. *See id.*

The trial court further considered Appellant's remorse, but it "could not ignore the egregious fact that [Appellant] continued to victimize A.T. while the charges at [Docket No. 4406-18] were pending." *Id.* at 10. The trial court took into account Appellant's statements in his PSI

in which he incredibly rationalized his actions by stating that the relationship was consensual: "The victim, I had a relationship with her from 2017 until the date I was incarcerated on November 30, 2018. I had a consensual relationship with her from February 2017." ([PSI] at 3).

*Id.* at 11. We discern no abuse of the trial court's sentencing discretion.

We are unpersuaded by Appellant's challenge to his aggregate sentence as unreasonable, because he might be incarcerated well into his 70s until reaching his statutory maximum. Appellant's minimum sentence of 19 years would make Appellant eligible for release in his late 50s. Appellant "is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." *Commonwealth v. Brown*, 249 A.3d 1206, 1216

(Pa. Super. 2021) (citation omitted). Further, Appellant's aggregate sentence is not unduly harsh, "considering the nature of the crimes and length of imprisonment." **Moury**, 992 A.2d at 172. Nothing in the record gives us reason to conclude that imposition of the standard-range sentences, even those imposed consecutively, constituted an abuse of the trial court's discretion. Consequently, Appellant's issue warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/30/2024