J-S09038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JHAMIR H. WINANS | : | |
| | : | |
| Appellant | : | No. 130 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 17, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003053-2022

BEFORE:    MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 28, 2026**

Appellant, Jhamir H. Winans, appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County after he pleaded guilty to numerous criminal charges related to his involvement with a criminal conspiracy to distribute methamphetamine.  Herein, he challenges the discretionary aspects of his sentence.  After careful review, we affirm.

The trial court aptly provides the facts and procedural history, as follows:

> Jhamir Winans belonged to a network stretching from California to the East Coast that engaged from late 2020 to early 2022 in an enterprise of distributing methamphetamine in the county where [the trial court] sits and nearby counties and states.  Charged with numerous felonies arising from his participation in this ring, Winans pled guilty . . . to corrupt organizations, drug offenses, and conspiracy [**see** *infra*], and [the trial court] sentenced him to an aggregate [sentence of] seven to fourteen years in prison.

---

[*] Former Justice specially assigned to the Superior Court.

. . .

[The factual and procedural context to the present matter begins with an investigation] involving federal, state, and local authorities uncover[ing] an operation being conducted by over a dozen people distributing methamphetamine in the region. [Appellant] Winans stood at the point in the organization of directly receiving shipments of pounds of the drug at a time from suppliers in California and then distributing or providing the drug to confederates for dispersal inside and outside Pennsylvania at a level several steps removed from the eventual consumers of the drug. Investigators placed Winans in relation to other members of the ring partly through electronic interceptions of their telephonic communication over a two-month period, as approved by order of a Superior Court Judge.

In March 2022, agents of Montgomery County Detectives Bureau arrested Winans and charged him with scores of crimes pursuant to an affidavit of probable cause encompassing his and the gang's activities projecting out from this county and beyond. Detectives also charged a number of the other conspirators, including the main supplier from Los Angeles, others who received shipments directly from him, and persons to whom Winans and others delivered methamphetamine, directly and indirectly, down the distributive chain.

Represented by private counsel, Winans waived a preliminary hearing in magisterial district court on most of the charges, others being withdrawn, and his case was lodged in [the Montgomery County Court of Common Pleas] in June 2022 . . . .

The system scheduled an initial pretrial conference . . . for September 2022, but it was continued at defense request based on voluminous discovery still being incomplete. Meanwhile, the Commonwealth moved to consolidate ten of the conspirators' cases, including Winans', and filed a criminal information against him under the Pennsylvania Rules of Criminal Procedure, Pa. R.Crim.P. 560, formally charging him with 223 counts of crime.

On September 21, 2022, after hearing, Judge Ferman of [the Montgomery County Court of Common Pleas] granted the motion for consolidation, and consonantly denied a defense motion for severance. The consolidated cases then devolved to the

> undersigned [trial court judge] and plans began for a massive three-week jury trial.
>
> . . .
>
> Over time, however, members of the criminal confederation, prominently the Los Angeles dealer who had directly supplied Winans with methamphetamine, began to peel off to enter pleas of guilty. By July 2023, when [the trial court] scheduled the case9s) for a three-week jury trial starting in September and going into October 2023, only seven remained to be tried.
>
> At a continued status conference in Winan's case [on] August 9, 2023, he, too, signaled his intention to plead guilty, and the trial court scheduled a hearing for August 14, 2023.

Trial Court Opinion, 11/26/25, at 1-3.

On August 14, 2023, Appellant entered a guilty plea to one count of Corrupt Organizations,[1] three counts of Manufacture, Delivery, or Possession with the Intent to Manufacture or Deliver ("PWID"),[2] and one count of Conspiracy — Manufacture, Delivery, or Possession with the Intent to Manufacture or Deliver.[3]

At sentencing, defense counsel argued for a mitigated range sentence because Appellant's prior record score of 5 reflected offenses he committed as a 16 year-old juvenile, he was only 22 years old and younger when he committed the present offenses, and he grew up without a father-figure from the time he was 10 years old, when his father was murdered. N.T., 1/17/2024, at 26-27. Other mitigating factors raised by defense counsel

---

[1] 18 Pa.C.S.A. § 911(b)(1).
[2] 35 Pa.C.S.A. § 780-113(a)(30).
[3] 18 Pa.C.S.A. § 903.

- 3 -

included Appellant's attainment of a high school diploma, his presentment of letters attesting to his good character, his work record, his status as a father to a one-year-old child he shared with his partner, who was in the courtroom, and his acceptance of responsibility as demonstrated by his decision to plead guilty to the charges. N.T. at 27-36.

The Commonwealth countered that a standard range sentence was appropriate, N.T. at 40-41, and it eventually asked the court to impose a sentence within "the agreed cap of 10 to 20 years," N.T. at 43,[4] as being consistent with its request for a 5 to 10 year sentence.

The trial court indicated it would impose neither a mitigated nor an aggravated range sentence, and it identified the standard range sentence of incarceration for PWID of methamphetamine, given Appellant's prior record score and offense gravity score,[5] as 72 to 90 months, plus or minus 12 months,[6] with a statutory maximum of 5 to 10 years' incarceration. N.T. at

---

[4] Appellant faced a maximum exposure of 40 to 80 years' incarceration, but the Commonwealth agreed prior to sentencing to cap the sentence to a maximum of 10 to 20 years' incarceration, with credit for approximately 22 months' time served. *See* Trial Court Opinion, 11/26/25, at 8.

[5] At the guilty plea hearing, the Commonwealth and Appellant acknowledged that one of the counts of PWID had an offense gravity score ("OGS") of 13 based on the weight of methamphetamine, but they agreed to use a lesser OGS of 11.

[6] It is well settled that the sentencing guidelines provide the range for an offender's minimum sentence, not the maximum sentence. *See* ***Commonwealth v. Mrozik***, 213 A.3d 273, 277 n.6 (Pa. Super. 2019) (citing *(Footnote Continued Next Page)*

26-27. With that, the trial court imposed standard range sentences of two to four years' incarceration on the felony-1 count of Corrupt Organizations and five to 10 years' incarceration for PWID and ran the sentences consecutively for an aggregate sentence of 7 to 14 years' incarceration, with sentencing for the remaining counts to run concurrently and with credit for time served.

Appellant raises one issue for this Court's consideration:

> Whether the Trial Court erred in imposing an unduly harsh, manifestly unreasonable and excessive sentence that did not follow the Sentencing Code or norms.

Brief of Appellant at 4.

Appellant seeks to challenge the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentence are not appealable as of right. *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, we must determine if Appellant invoked our jurisdiction, which requires us to consider (1) whether Appellant filed a timely notice of appeal; (2) whether Appellant preserved the issue at sentencing or in a motion to reconsider and modify sentence; (3) "whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal" pursuant to Pa.R.A.P. 2119(f); and (4) "whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing

---

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1049 (Pa. Super. 2011)).

[C]ode." ***Commonwealth v. Carrillo-Diaz***, 64 A.3d 722, 725 (Pa. Super. 2013) (citation omitted).

Our review shows Appellant timely appealed, preserved his sentencing challenge in his post-sentence motion, and included a Rule 2119(f) statement in his brief. Accordingly, we consider whether he has presented a substantial question for our review.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation and internal quotation marks omitted). Appellant argues in his Rule 2119(f) statement that there is a substantial question that his sentence is inappropriate under the Sentencing Code because the trial court imposed a "manifestly excessive" aggregate sentence without adequately considering his young age, that he was a 16 year-old juvenile when he compiled his prior criminal record, and that he was only 10 years old when his father was murdered. ***See*** Brief of Appellant, at 13-16.

The imposition of consecutive as opposed to concurrent sentences is solely within the sound discretion of the trial court and does not alone present a substantial question. ***Commonwealth v. Morrobel***, 311 A.3d 1153, 1157 (Pa. Super. 2024) (observing that "in most cases, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not

viewed as raising a substantial question" (citation and internal quotation marks omitted)). "[T]he imposition of consecutive, rather than concurrent sentences, may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*).

This Court has held, however, that "[a] claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances ... raises a substantial question." *Commonwealth v. Knox*, 165 A.3d 925, 929-30 (Pa. Super. 2017) (citing *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*)); *see also Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa. Super. 2013) (same). Given Appellant's claim that his sentence is both excessive and the product of the trial court's disregard of mitigating factors, we conclude it raises a substantial question. *Caldwell*, 117 A.3d at 770 (holding that "an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question."); *Knox*, 165 A.3d at 929-30. Accordingly, we review the merits of Appellant's challenge to his sentence.

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Taylor*, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted). *See also Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018) ("The standard employed when reviewing the discretionary aspects of sentencing is very narrow.").

42 Pa.C.S.A. § 9721(b) provides that the sentence imposed should call for "total confinement that is consistent with ... the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines ...." [7] *Accord Commonwealth v. Laughman*, 314 A.3d 569, 571-72 (Pa. Super. 2024).

Appellant's entire argument that the trial court abused its sentencing discretion by imposing the standard range sentence of two to four years for

---

[7] When reviewing whether a sentencing court imposed a sentence that was unreasonable, we are to be guided by the considerations listed in 42 Pa.C.S.A. § 9781(d): the nature and circumstances of the offense and history and characteristics of the defendant; opportunity of sentencing court to observe the defendant, including any presentence investigation; findings upon which the sentence was based; and sentencing guidelines – and whether the trial court properly considered the sentencing factors outlined in 42 Pa.C.S.A. § 9721(b). *See Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007).

Corrupt Organizations consecutively to the standard range sentence of five to 10 years for PWID-Methamphetamine states:

> Instantly, the Appellant was sentenced to a consecutive term of incarceration which was manifestly excessive and unduly harsh. The Trial Court failed to adequately consider the Appellant's history and background in that he was 22 years old when sentenced, his actions in the present case were committed when he was between 18 and 22, and his prior record score were [sic] from convictions when he was a juvenile. The Trial Court further failed to appropriately consider that the Appellant's father was murdered when he was 10 years old and that he had a newborn child. Finally, the Trial Court failed to adequately consider his remorse and acceptance of responsibility. For these reasons, the sentence should be vacated and a resentencing hearing scheduled.

Brief of Appellant, at 18.

It "is well settled that imposition of consecutive rather than concurrent sentences rests within the trial court's discretion." ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa. Super. 2018) (citation and internal quotation marks omitted). An appellate court will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate to the appellant's conduct" or "viscerally appear[s] as patently unreasonable." ***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 599 (Pa. Super. 2010). This Court affords sentencing courts discretion to impose sentences concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed, ***Commonwealth v. Brown***, 249 A.3d 1206, 1216 (Pa. Super. 2021), and it has observed that "[a]n appellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." ***Commonwealth v. Lawrence***, 313 A.3d 265, 286 (Pa. Super. 2024) (citation and brackets omitted).

The record belies Appellant's claim that the trial court failed to consider mitigating circumstances including his rehabilitative needs when it settled on imposing standard range sentences and running them consecutively. At the outset of Appellant's sentencing hearing, the trial court announced that it received a pre-sentence investigation report several months earlier, reviewed the sentencing guidelines, and received many letters from family members and friends, and character letters on behalf of Appellant Winans. The trial court also acknowledged receiving the PPI evaluation from Rise Above and submissions from defense counsel, which included certificates of completion from various programs and educational pursuits, as well as pictures of his girlfriend and children. N.T., 1/17/24, at 3.

As referenced above, defense counsel argued that a mitigated sentence would be appropriate when one considers, *inter alia*, that Appellant Winan's Prior Record Score was based only on adjudications of delinquency for offenses he committed when he was 16 years old, offenses including robbery and felony receiving stolen property, which were committed four years before the conduct in question. N.T. at 26. The trial court also received Appellant's testimony at the sentencing hearing, telling him at the outset, "I want you to talk to me." N.T. at 31. As Appellant spoke about his family, his work ethic, and the mistakes he made, he struggled to articulate what he had learned, saying, "Everything that – everything that –" before the trial court interjected, "Everything that glitters is not gold," to which Appellant replied, "Yeah, exactly." The trial court replied, "I know what you're trying to say." N.T. at 32.

When Appellant completed his testimony, the trial court addressed the apparent dichotomy between Appellant as family man, friend, and student on one hand, and gun-toting drug trafficker on the other:

**Trial Court:** Mr. Winans, I looked at the certificates that you submitted to me. One is Out of Reach Training Course for General Industry you completed. Student of the Month Award Excellence Achievement. School District of Philadelphia graduated. Citizenship Superior Achievement Academic Excellence for a grading period. High honor roll Pennypack High School all subject areas.

And then I look at this video. I had seen it before, as you know. I've been a part of this case for quite a while. You're promoting violence. A table full of AR-15's, all kind of guns. You're the3n the middleman for shipping pounds, pounds of methamphetamines. Methamphetamines, let's talk about that.

Some come from China, then it goes to the Mexican cartels who distribute it primarily from California, and it reaches our region and as far as West Virginia.

Then I read countless letters, countless letters from people saying the role you played in the family, how you've been – one of your stepbrothers talks about how he's looked up to you. You have a sister you're close to, letters from your mother, tons of other people. For the life of me I can't figure you out.

You've had a tough upbringing, yet you're getting high achievements. You're completing courses. I look at your fiancée and pictures of her and your children. Beautiful fiancée, beautiful daughter, you know, kids. And then I look at this video and this gang and I just can't figure you out. It's like two different worlds at the same time.

Criminal history score of 5. That's the highest you can get. So on one hand it looks like you had a tough, tough, tough life. On the other hand it looks like you're achieving great things, on the road to great things. And then you're associating yourself with people promoting murder and executions.

Now I know you said that's a video. It's entertainment. Those guns are[] with the people who have guns who have no business with them. . . . It's not [just] that they didn't have a license to have them, . . . they were convicted of crimes which makes it illegal for them to have guns. You have a whole table full of them.

- 11 -

So, as I sit here – I'm going to hear from the Commonwealth in a few minutes. But as I sit here as a judge and I look at this courtoom full of family support, relatives, friends, you name it, but you know what else I have to consider? Those people who are not in this room, the communities where these pounds of methamphetamine affected them. I have to look at your rehabilitative needs. And what I'm reading, you don't know [sic] need rehabilitation, but I have to consider that.

I read the reports from the person who prepared the Rise Above and they found you to be very open. They found you to be very honest in your interviews with them. And they say you have a cannabis disorder. Basically, you were smoking a lot of marijuana, opiate disorder, alcohol use disorder, substance-induced depression.

But they also found you to be alert and oriented to person, to place and time, cooperative throughout the interview. Your speech was normal. Attituded cooperative.

But then on the other hand, since the age of 13 you've been using cannabis, four blunts a day, taking Percocet. Taking Percocet. Drinking. You're just a contradiction.

So I have to consider your rehabilitative needs. I have to think of the community because you brought this stuff into our community. Pounds into our community.

N.T. at 36-39.

The record shows that contrary to Appellant's argument, the trial court gave extensive attention to Appellant's mitigating factors and rehabilitative needs as part of its exercise of sentencing discretion, reviewed the record appropriately, and disagreed that it supported a mitigated range sentence. We discern no abuse of sentencing discretion in this regard. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (stating, "The ... court merely chose not to give the mitigating factors as much weight as [the a]ppellant would have liked .... We cannot re-weigh the sentencing factors and impose our judgment [instead]").

Judgment of sentence is AFFIRMED.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/28/2026